THOMAS R. Burke (CA State Bar No. 141930)
   thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

JONATHAN R. DONNELLAN
   jdonnellan@hearst.com (*pro hac vice*)
DIEGO IBARGUEN
   dibarguen@hearst.com (*pro hac vice*)
HEARST CORPORATION
300 W. 57th Street, 40th Floor
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000

Attorneys for Defendant
HEARST COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHID BUTTAR FOR CONGRESS COMMITTEE, et al.,<br><br>                     Plaintiffs,<br><br>     vs.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>     Defendant. | Case No. 3:21-cv-05566-EMC<br><br>**DEFENDANT HEARST COMMUNICATIONS, INC.'S NOTICE OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT**<br><br>**[Cal. Code Civ. Pro. § 425.16; Fed. R. Civ. P. 12(b)(6)]**<br><br>Date:     March 17, 2022<br>Time:     1:30 p.m.<br>Place:    Courtroom 5, 17th Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 17, 2022, at 1:30 p.m. in Courtroom 5, 17th

Floor of the United States District Court for the Northern District of California, located in the

San Francisco Courthouse at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant

Hearst Communications, Inc., ("Hearst") will and hereby does move this Court for an order

dismissing Plaintiffs' claims against it pursuant to California Code of Civil Procedure § 425.16 and Fed. R. Civ. P. 12(b)(6), and for an order granting Hearst its attorneys' fees pursuant to Cal. Code Civ. P. § 425.16(c).

As set forth in more detail in the attached memorandum of points and authorities, the Court should order the dismissal of Plaintiffs' claims against Hearst because:

1.      California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute") applies to each of Plaintiffs' claims against Hearst because they all indisputably arise from Hearst's reporting in connection with a public issue or an issue of public interest (a public controversy sparked by allegations of sexual harassment made against a candidate for the U.S. House of Representatives, the candidate's reaction to the allegations, and the public reaction to them), all published in a public forum.  *See* Cal. Civ. Proc. Code § 425.16(e)(3) and (4); Memorandum ("Mem."). § IV.

2.      Because the anti-SLAPP statute applies to all of Plaintiffs' claims against Hearst, the burden shifts to Plaintiffs to establish a probability that they will prevail as to each claim. Cal. Civ. Proc. Code § 425.16(b)(1); Mem. § IV.  Because Hearst challenges the legal sufficiency of Plaintiffs' claims, Plaintiffs must show they have alleged sufficient facts to raise a right to relief above the speculative level.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1446 (2019); *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).  Plaintiffs cannot meet their burden for the following reasons, among others:

3.      Plaintiffs fail to identify specific statements they allege are defamatory, which is required under settled California law.  *See* Mem. § V(1).

4.      Even if Plaintiffs had sufficiently pled that they were defamed by Hearst's reporting on a public controversy sparked by public allegations made against a candidate for elected office, Plaintiffs cannot prove that Hearst's published statements on this matter are false; to the contrary Hearst's reporting on this matter accurately and impartially recounts the nature of allegations made against a candidate for election to the U.S. House of Representatives, the

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT
CASE NO. 3:21-CV-05566-EMC

candidate's denial of those allegations, and the public reaction to the allegations.  Hearst's published statements on this matter of public interest are substantially true, and, accordingly, Plaintiffs fail to sufficiently plead they were defamed.  *See* Mem. § V(1).

5.    Plaintiffs will be unable to prove damages.  Plaintiffs have insufficiently pled that they suffered any special damages, and the Complaint does not adequately plead that they are entitled to any other damages because they failed to demand a correction, as required by California Civil Code § 48(a).  *See* Mem. § V(2).

6.    Even accepting all of Plaintiffs' facts as true, the Complaint nevertheless fails to sufficiently plead any facts that make plausible their allegation that Hearst's reporting on this matter was published with actual malice – *i.e.*, with knowledge that the statements were false or with reckless disregard as to whether they were true – much less facts that could satisfy the "clear and convincing" standard applicable, as a matter of law, to defamation actions brought by public figures.  *See* Mem. § V(3).

7.    Plaintiffs' claim of unfair business acts and practices in violation of Cal. Bus. & Prof. Code §§ 17200 et seq., is derivative of and turns entirely on Plaintiffs' defamation claim. Because their defamation claim fails, so, too, must their derivative claim under § 17200.  *See* Mem. § V(4).

Accordingly, this Court should grant Hearst's motion and dismiss Plaintiffs' claims, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) and Cal. Civ. Proc. Code § 425.16(b)(1).  Hearst also requests that it be awarded its attorneys' fees and costs incurred in defending this meritless lawsuit, pursuant to Cal. Civ. Proc. Code § 425.16(c), in an amount to be determined by subsequent motion.

This motion is based on this notice; the attached memorandum of points and authorities; the concurrently filed request for judicial notice; the concurrently filed declaration of Diego Ibarguen with Exhibits A-H; any other matters of which this Court may take judicial notice; all pleadings, files and records in this action; and such other argument as this Court may receive at this motion's hearing.

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1

2  DATED:  December 2, 2021                    THOMAS R. BURKE
                                               DAVIS WRIGHT TREMAINE LLP
3
                                               JONATHAN R. DONNELLAN (*pro hac vice*)
4                                              DIEGO IBARGUEN (*pro hac vice*)
                                               HEARST CORPORATION
5
                                               By: ___/s/ Diego Ibarguen_____
6
                                               Attorneys for Defendant
7                                              HEARST CORPORATION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................3

III.    STANDARD OF REVIEW ...................................................................................6

IV.     SECTION 425.16 APPLIES TO PLAINTIFFS' CLAIMS ...................................8

V.      THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO
        STATE A CLAIM FOR DEFAMATION ..............................................................9

        1.      Hearst's Published Statements are Substantially True...............................9

        2.      Plaintiffs Did Not Adequately Demand a Correction or Plead
                Compensable Damages as Required by California Law...........................15

        3.      Plaintiffs Cannot Show That Any Statement Was Published
                with Actual Malice...................................................................................18

        4.      Plaintiffs' Derivative Claim Under Cal. Bus. & Prof. Code §§
                17200, et seq. Also Fails ........................................................................21

VI.     PLAINTIFF BUTTAR CAMPAIGN FAILS TO STATE A CLAIM..................21

VII.    CONCLUSION.................................................................................................22

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aisenson v. Am. Broad. Co.*,

5     220 Cal. App. 3d 146 (1990) .................................................................................8

6

*Anschutz Ent. Grp. v. Snepp*,

7     171 Cal. App. 4th 598 (2009) .............................................................15, 16, 18

8

*Ashcroft v. Iqbal*,

     556 U.S. 662 (2009).........................................................................2, 2, 6, 7

9

*Bell Atl. Corp. v. Twombly*,

10     550 U.S. 544 (2007)...........................................................................2, 6, 7

11

*Blatty v. N.Y. Times Co.*,

     42 Cal. 3d 1033 (1986) ......................................................................21

12

*Braun v. Chronicle Publ'g Co.*,

13     52 Cal. App. 4th 1036 (1997) ......................................................6, 8, 16, 22

14

*Colt v. Freedom Commc'ns, Inc.*,

15     109 Cal. App. 4th 1551 (2003) ..............................................................12, 14

16

*Conroy v. Spitzer*,

     70 Cal. App. 4th 1446 (1999) ................................................................12, 18

17

*Donald J. Trump for President, Inc. v. Cegavske*,

18     488 F. Supp. 3d 993 (D. Nev. 2020).........................................................22

19

*Eisenberg v. Alameda Newspapers, Inc.*,

20     74 Cal. App. 4th 1359 (1999) .................................................................10

21

*Eva v. Smith*,

     89 Cal. App. 324 (1928) ......................................................................8

22

*Field Research Corp. v. Superior Ct. of S.F.*,

23     71 Cal. 2d 110 (1969) .........................................................................16

24

*Flowers v. Carville*,

25     310 F.3d 1118 (9th Cir. 2002) ...............................................................10

26

*Forsher v. Bugliosi*,

     26 Cal. 3d 792 (1980) ........................................................................14

27

28

ii

*Freedom Newspapers, Inc. v. Superior Ct.*,
    4 Cal. 4th 652 (1992) ...................................................................................15, 16

*Gang v. Hughes*,
    111 F. Supp. 27 (S.D. Cal. 1953) ..............................................................17

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ......................................................................7

*Glassdoor, Inc. v. Superior Ct.*,
    9 Cal. App. 5th 623 (2017) ........................................................................10

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)....................................................................................20

*Hawran v. Hixson*,
    209 Cal. App. 4th 256 (2012) .....................................................................21

*Issa v. Applegate*,
    31 Cal. App. 5th 689 (2019) .......................................................................11

*Kaelin v. Globe Commc'ns Corp.*,
    162 F.3d 1036 (9th Cir. 1998) ....................................................................11

*Kieu Hoang v. Phong Minh Tran*,
    60 Cal. App. 5th 513 (2021) .......................................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................................22

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)..........................................................................9, 10, 12

*Matson v. Dvorak*,
    40 Cal. App. 4th 539 (1995) .................................................................8, 12

*McGarry v. Univ. of San Diego*,
    154 Cal. App. 4th 97 .............................................................................18, 20

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974)....................................................................................13

*Mullins v. Thieriot*,
    19 Cal. App. 3d 302 (1971) ........................................................................14

*Navellier v. Sletten*,
    106 Cal. App. 4th 763 (2003) ......................................................................9

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ........................................................................................... *passim*

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.,*
    190 F.3d 963 (9th Cir. 1999) ...................................................................................7

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) .................................................................10, 14, 15

*Phila. Newspapers, Inc. v. Hepps,*
    475 U.S. 767 (1986) ................................................................................................9

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,*
    946 F. Supp. 2d 957 (N.D. Cal. 2013) ...................................................................15

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
    890 F.3d 828 (9th Cir. 2018) ..............................................................................2, 7

*Pridonoff v. Balokovich,*
    36 Cal. 2d 788 (1951) ...........................................................................................17

*Reader's Digest Ass'n v. Superior Ct.,*
    37 Cal. 3d 244 (1984) ...............................................................................10, 18, 20

*Sarver v. Chartier,*
    813 F.3d 891 (9th Cir. 2016) ..................................................................................7

*Selleck v. Globe Int'l Inc.,*
    166 Cal. App. 3d 1123 (1985) ...............................................................................11

*Sipple v. Found. For Nat'l Progress,*
    71 Cal. App. 4th 226 (1999) ........................................................................7, 8, 18

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ..............................................................................................22

*St. Amant v. Thompson,*
    390 U.S. 727 (1968) ..............................................................................................20

*In re Syntex Corp. Sec. Litig.,*
    95 F.3d 922 (9th Cir. 1996) ....................................................................................6

*Taus v. Loftus,*
    40 Cal. 4th 683 (2007) ............................................................................................9

*Thomas v. L.A. Times Commc'ns, LLC,*
    189 F. Supp. 2d 1005 (C.D. Cal. 2002) ...........................................................14, 15

iv

*Underwager v. Channel 9 Austl.*,
  69 F.3d 361 (9th Cir. 1995) ...................................................14

*Varian Med. Sys., Inc. v. Delfino*,
  35 Cal. 4th 180 (2005) ...........................................................9

*Vogel v. Felice*,
  127 Cal. App. 4th 1006 (2005) ..........................................9, 12

*Ward v. News Grp. Int'l, Ltd.*,
  733 F. Supp. 83 (C.D. Cal. 1990) ........................................12

*Winter v. DC Comics*,
  30 Cal. 4th 881 (2003) .............................................................6

*Yorty v. Chandler*,
  13 Cal. App. 3d 467 (1970) ....................................................8

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 et seq. ...................................3

Cal. Civ. Code § 48(a) ................................................... *passim*

Cal. Civ. Proc. Code § 425.16 ........................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)................................................... *passim*

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Candidates for elected office necessarily expose themselves to intense public scrutiny and criticism, not just of their political positions, but also of their qualifications for office, their character and their integrity.  Public discussion of a candidate's fitness for elected office is so fundamental to democracy as to be at the core of the core of constitutionally protected political speech.  And the press plays a central role in informing the public about the issues and controversies relevant to the decisions they make at the ballot box.  This lawsuit is a misguided effort to punish a newspaper for providing reporting on precisely such core political concerns.

Plaintiff Shahid Buttar (hereinafter, "Buttar") was a candidate in the November 3, 2020 general election for California's 12th U.S. Congressional District in the 2020 general election, seeking to unseat one of the most powerful members of Congress, U.S. Rep. Nancy Pelosi, the sitting Speaker of the House and the second person in the presidential line of succession.  On July 21, 2020, in the heat of his campaign for the House, Buttar was at the center of a public controversy about his character after an acquaintance published an essay on the website *Medium* alleging that Buttar sexually harassed her decades earlier.  The allegations were quickly and widely discussed, and led some political groups and politicians that had previously endorsed Buttar to publicly reconsider their support in light of the allegations.  Buttar, too, entered the public discourse, denying the claims and expressing a hope that he, too, would have an opportunity to be heard.

In the wake of these events, several news publications, including the *San Francisco Chronicle*, a newspaper owned and operated by Defendant Hearst Communications, Inc. (hereinafter, "Hearst"), reported on this matter of significant public interest to voters.  Hearst's reporting fairly and accurately informed the public on the nature of the controversy, the substance of the allegations against Buttar, Buttar's denial of those allegations and wish to be heard on the matter, and actions undertaken in response to the allegations by some political supporters.

1

Hearst was fulfilling its fundamental role in informing the voting public about the nature of this controversy about a candidate seeking to unseat one of the most powerful figures in American government.  Nevertheless, a year after the public controversy arose, and nine months after he lost his election bid, Buttar, together with Plaintiff Shahid Buttar for Congress Committee (hereinafter, the "Buttar Campaign"), filed the present Complaint (ECF No. 1 in this action, hereinafter, the "Complaint" or "Compl.") against only Hearst – and not against any of the many other publications that reported on the same controversy – alleging defamation and a derivative unfair competition claim.

The Complaint is frivolous and the facts it pleads betray the lack of merit of its claims. Plaintiffs identify no specific statement published by Hearst, as they are required to do by law, that forms the basis of their defamation claim.  They suggest that Hearst's reporting should have included the opinions of their preferred sources to cast doubt on the truth of the allegations, but they plead facts reflecting that those people had no direct knowledge of the truth or falsity of the claims.  They claim an entitlement to a variety of monetary damages, yet fail to plead any injury resulting directly from Hearst's reporting, and they are, in any event, barred as a matter of law from recovering other damages because they do not plead that they demanded a correction in compliance with California's correction statute.  They allege Hearst reported on this public controversy with "actual malice," but they fail to plead facts that would make their otherwise conclusory allegation plausible, as they are required to do under *Twombly* and *Iqbal*, and as required under *Sullivan* and its progeny.  And they name the Buttar Campaign as a party, despite failing to plead any statement published by Hearst defamed it, and failing to plead that the campaign, which exists solely as a vehicle through which Buttar ran for elected office, suffered any injury at all.

The Complaint fails to plausibly plead a claim upon which relief can be granted.  For these reasons, Hearst respectfully requests that the Court dismiss Plaintiffs' claims in their entirety under Rule 12(b)(6) and California's anti-SLAPP statute, and that it award Hearst its mandatory attorneys' fees to be determined by separate motion pursuant to the anti-SLAPP law.

II.     **STATEMENT OF FACTS**

In July 2020, Plaintiff Buttar was a candidate in the November 3, 2020 general election for California's 12th U.S. Congressional District in the 2020 general election, seeking to unseat U.S. Rep. Nancy Pelosi, the sitting Speaker of the House.  Compl. ¶ 9.  He was ultimately unsuccessful in this effort.  Compl. ¶ 48.

On July 21, 2020, an acquaintance of Buttar, Elizabeth Croydon (hereinafter, "Croydon"), published an essay ("Croydon's Essay") on the web site Medium.com titled "*Shahid Buttar Repeatedly Sexually Harassed Me*."  Compl. ¶ 16; Declaration of Diego Ibarguen ("Ibarguen Decl."), Ex. G.  In her essay, Croydon alleged, among other things, that when she and Buttar were both living In Washington, D.C., in the early 2000s and were part of the same activism and arts community, Buttar "made [her] feel uncomfortable"; "repeatedly pursued [her] for sex"; and "let [her] know that he was sexually available to [her] for years".  Ibarguen Decl. Ex. G.  Croydon's Essay described an instance roughly a decade later in which she said she was "shocked and embarrassed" when, after Croydon discussed her celibacy, Buttar allegedly responded with comments that Croydon wrote made her feel "degraded, nauseated, and revolted that he would mock me in front of friends who looked to me as an outspoken voice for women." Ibarguen Decl. Ex. G.   At the conclusion of her essay, Croydon expressed the opinion: "We on the left must hold ourselves to a higher standard as we are committed to creating a just and equitable world, free from sexual misconduct, misogyny and bullying . . . .  The left can do better than Shahid Buttar."  Ibarguen Decl. Ex. G.

The allegations in Croydon's Essay immediately sparked a public discussion (Compl. ¶ 49 ("Ms. Croydon's false accusations were immediately and consistently seized upon by critics across the political spectrum")).  On the same day, July 21, 2020, the fact that these public allegations were made against Buttar and the public discussion of them were the focus of multiple published news reports, including: an article published by the local online news site *Bay Area Reporter* titled, "Political Notebook: Pelosi challenger Buttar accused of sexual harassment, misogyny" (Compl. ¶ 27; Ibarguen Decl. Ex. C); an article published by the local online news

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

site *48 Hills* titled, "The end of Shahid Buttar's Campaign – and the lessons" (Compl. ¶ 50; Ibarguen Decl. Ex. F); and an article published by the local online news site *Mission Local* titled, "Pelosi challenger Shahid Buttar accused of sexual harassment, misogyny" (Compl. ¶ 50; Ibarguen Decl. Ex. E).

Also on July 21, 2020, Hearst published the first of two articles regarding the public controversy sparked by the allegations, titled, "Shahid Buttar, Nancy Pelosi's election opponent, accused of sex harassment" (hereinafter, "Hearst's First Article"). Compl. ¶¶ 2, 15. Hearst's First Article, published at 8:19 p.m., included a hyperlink to Croydon's Essay. Ibarguen Decl. Ex. A; Compl. ¶ 45. Hearst's First Article also included a statement from Buttar stating that the allegations "are false," describing sexual harassment as "despicable", and affirming that "[e]very survivor must be heard, and I hope to be allowed the same opportunity to be heard as well". Ibarguen Decl. Ex. A. Hearst's First Article also reported on public pronouncements by two political organizations that had previously endorsed Buttar's candidacy, which now said they were reevaluating their endorsements in light of the allegations, and also that one local elected official reacted to the allegations by having his name removed from Buttar's website and signing " a . . . petition to unendorse him". *Id.* Acknowledging the public scrutiny that such allegations must produce, Buttar's statement to Hearst acknowledged that local organizations were evaluating the allegations, stating "I invite their examination of the issues and our campaign welcomes any scrutiny." *Id.*

About ten minutes *after* Hearst's First Article was published, a Buttar Campaign representative emailed Hearst at 8:30 p.m. on July 21, 2020, offering to connect the newspaper with "some people who can speak about [Mr. Buttar's] character and other claims [Ms. Croydon] has made in the past that are false – including one who alleges that she also made false claims about her husband. Would you want to speak with them? We are reluctant to attack her character out of respect to survivors . . . but they are willing to speak with you." Compl. ¶ 21 (alteration in original) (emphasis omitted). That email did not suggest the people referenced had any direct knowledge regarding Croydon's claims about Buttar. *Id.* Early the next morning, at

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

5:44 a.m. on July 22, 2020, a representative of Buttar's campaign emailed a Hearst reporter asserting that "'a number of voices' had been 'left out'" of Hearst's First Article, and requesting that Hearst interview individuals "closer to this situation." (hereinafter, the "Request for Follow-up Coverage") Compl. ¶ 30.  The Request for Follow-up Coverage did not assert that any of these individuals had actual knowledge of the truth or falsity of Croydon's claims about Buttar, nor did it demand a correction of Hearst's First Article the day before.  *Id.*

Two days later, on July 24, 2020, a group of 17 individuals published an "Open Letter of Support for Shahid Buttar" (hereinafter, the "Open Letter") on the website called *Independent Political Report* asserting, among other things, that Croydon's allegations "attempted to draw a different picture of Shahid than the one we know to be true."  Compl. ¶ 38; Ibarguen Decl. Ex. H.  The signatories of the Open Letter stated the opinion that they "believe these allegations are false and ill intentioned," and asserted that, based on unrelated actions they attributed to Croydon, the signatories believed "[s]he is NOT a credible witness."  Compl. ¶ 38; Ibarguen Decl. Ex. H.  Of particular note, the Open Letter does not contain any assertions that the signatories had direct knowledge regarding the truth of Croydon's claims about Buttar.  Ibarguen Decl. Ex. H.

On July 24, 2020, Hearst published another article about the controversy (hereinafter, "Hearst's Follow-Up Article" and together with Hearst's First Article, "Hearst's Articles" or "Hearst's Reporting" ), referencing and quoting from the Open Letter, and also quoting several activists who signed the Open Letter.   Compl. ¶ 41; Ibarguen Decl. Ex. B.  As with Hearst's First Article, Hearst's Follow-up Article also included hyperlinks to Croydon's Essay.  Compl. ¶ 45.

At no point did Plaintiffs serve a demand for correction on the publisher of the San Francisco Chronicle consistent with the requirements of California Civil Code § 48(a).

Nearly one year later, on July 20, 2021, on the last day of California's statute of limitations period for defamation claims, Plaintiffs filed this action alleging they were defamed

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1  by Hearst's publication of "an article containing a false allegation that Congressional candidate

2  Shahid Buttar had committed sexual harassment."  Compl. ¶ 2.

3  **III.    STANDARD OF REVIEW**

4          Hearst seeks dismissal of this action pursuant to both Rule 12(b)(6) and California's anti-

5  SLAPP law.

6          Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

7  true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 570 (quoting *Bell*

8  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must draw all reasonable

9  inferences in favor of the nonmoving party and accept the facts alleged in the complaint as true,

10  the plaintiff must still "plead[] factual content that allows the court to draw the reasonable

11  inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 570.

12  However, in making this determination, a court need not credit "conclusory allegations of law

13  and unwarranted inferences" in favor of plaintiff.  *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922,

14  926 (9th Cir. 1996).  Importantly, the Court must be mindful of the chilling effect that costly and

15  protracted litigation can have on speech concerning public officials and candidates for public

16  office.  *See, e.g.*, *Winter v. DC Comics*, 30 Cal. 4th 881, 892 (2003) ("because unnecessarily

17  protracted litigation would have a chilling effect upon the exercise of First Amendment rights,

18  speedy resolution of cases involving free speech is desirable." (alteration and citations omitted)).

19          The California anti-SLAPP statute broadly protects the discussion of issues of public

20  concern by "nip[ping] SLAPP litigation in the bud by striking offending causes of action[]."

21  *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997).

22          The anti-SLAPP statute provides that any "cause of action against a person arising from

23  any act . . . in furtherance of the person's right of petition or free speech under the United States

24  Constitution or the California Constitution in connection with a public issue shall be subject to a

25  special motion to strike, unless the court determines that the plaintiff has established that there is

26  a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1).

27  The law applies to, among other things, "any . . . conduct in furtherance of the exercise of the

28

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Id*. § 425.16(e)(4).

Once a defendant has shown that the anti-SLAPP statute applies to a claim against it, a court must look to the merits of the plaintiff's claim. *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016).   Federal courts may consider arguments based on the anti-SLAPP statute at either the motion to dismiss or the summary judgment stage.  *See Planned Parenthood*, 890 F.3d at 834. When, as here, "an anti-SLAPP motion to strike challenge[d] only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id*. at 834.

Accordingly, the procedural grounds for dismissal under anti-SLAPP are identical to those under Rule 12(b)(6): a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . . [—]that is, a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555-56, 569.  In determining whether the complaint states a "plausible" claim, this Court need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action . . . ." *Iqbal*, 556 U.S. at 678; *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  If the plaintiff fails to satisfy the pleading standards under Rule 12(b)(6), the Court must strike the claim, and award the moving party its attorneys' fees under California's substantive law, which applies to this action brought in diversity.  *Planned Parenthood*, 890 F.3d at 834; Cal. Civ. Proc. Code § 425.16(b)(1), (b)(2), (c)(1); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999) (applying anti-SLAPP attorneys' fees provision to state law claims brought in federal court).

Against these weighty concerns, the *Iqbal*/*Twombly* standard takes on particular relevance.  Under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), to maintain an action for defamation, a public figure such as Plaintiffs in this action must plead that the defendant made the challenged statements with knowledge of their falsity or reckless disregard as to their falsity, and subsequently prove actual malice by "clear and convincing evidence".  *See, e.g.*, *Sipple v. Found. For Nat'l Progress*, 71 Cal. App. 4th 226, 248 (1999) (explaining that in public

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1   figure defamation actions, the "clear and convincing" standard requires a showing that the

2   speaker "entertained serious doubts as to the truth of the publication.").

3   **IV.    SECTION 425.16 APPLIES TO PLAINTIFFS' CLAIMS**

4          Here, there is no question that the anti-SLAPP statute applies to the claims against

5   Hearst, which arise from its publication of news articles regarding this public controversy, which

6   involved: (1) the published accusations of sexual harassment against Buttar, then a candidate for

7   the U.S. House of Representatives; (2) Buttar's response to those allegations; and (3) the public

8   response to those allegations, including the reactions of several political supporters of Buttar.

9   *Sipple*, 71 Cal. App. 4th at 240 ("[N]ews reporting is free speech and section 425.16 motions

10  can apply to media defendants in libel actions") (citing *Braun*, 52 Cal. App. 4th at 1044); *see*

11  *also Matson v. Dvorak*, 40 Cal. App. 4th 539, 548 (1995) ("The right to speak on political

12  matters is the quintessential subject of our constitutional protections of the right of free speech.

13  'Public discussion about the qualifications of those who hold or who wish to hold positions of

14  public trust presents the strongest possible case for applications of the safeguards afforded by the

15  First Amendment'") (quoting *Aisenson v. Am. Broad. Co.*, 220 Cal. App. 3d 146, 154 (1990));

16  *Yorty v. Chandler*, 13 Cal. App. 3d 467, 473 (1970) (quoting *Eva v. Smith*, 89 Cal. App. 324,

17  328-330, (1928) ("'An individual who seeks or accepts public office invites and challenges

18  public criticism so far as it may relate to his fitness and qualifications. . . . The right of criticism

19  rests upon public policy . . . .'")).

20         The challenged articles, which accurately report on a public controversy directly related

21  to a candidate for the U.S. Congress, fits squarely in the scope of "conduct in furtherance of the

22  exercise of the constitutional right of petition or the constitutional right of free speech in

23  connection with a public issue or an issue of public interest" that is protected by the anti-SLAPP

24  law. Cal. Civ. Proc. Code § 425.16(e)(4). Plaintiffs acknowledge that the allegations sparked

25  immediate and wide-ranging public interest and discussion and even a public response from

26  Buttar himself. *See, e.g.*, Compl. ¶¶ 37, 39, 50 (referencing various news articles reporting on

27  the controversy and underlying allegations; *id.* ¶ 49 ("Ms. Croydon's false accusations were

28

                                              8

1  *immediately and consistently seized upon by critics across the political spectrum* (emphasis

2  added)); *id.* ¶ 38 (referencing the Open Letter supportive of Buttar and questioning Croydon's

3  credibility based on unrelated matters); *id.* ¶ 18 (referencing Buttar's issuance of a public denial

4  of the allegations).

5       For these reasons, the anti-SLAPP law easily applies to Plaintiffs' claims.  Accordingly,

6  the burden shifts to the plaintiff to demonstrate "a probability of prevailing on the claim."

7  *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) (citation omitted).  The nature of

8  this burden is deliberately stringent, and requires that Plaintiffs must "establish evidentiary

9  support for [their] claim."  *Navellier v. Sletten*, 106 Cal. App. 4th 763, 775-76 (2003) (citation

10  and emphasis omitted).  Specifically, Plaintiffs must demonstrate that the claims are "supported

11  by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by

12  the plaintiff is credited."  *Taus v. Loftus*, 40 Cal. 4th 683, 713-14 (2007) (citations omitted).  If

13  Plaintiffs fail to satisfy its burden, the Court must strike the Complaint.  Cal. Civ. Proc. Code §

14  425.16(b)(1).  For the reasons discussed below, Plaintiffs do not meet their burden of pleading a

15  probability of prevailing against Hearst on these claims.

16  **V.   THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A
17  CLAIM FOR DEFAMATION**

18  **1.  Hearst's Published Statements are Substantially True.**

19       To succeed on a defamation claim, the First Amendment and the anti-SLAPP statute

20  place the burden on Plaintiffs to show that each statement which they claim is defamatory is, in

21  fact, materially false in the context of the whole publication.  *See Sullivan*, 376 U.S. 254 at 279-

22  80; *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986); *Vogel v. Felice*, 127 Cal. App.

23  4th 1006, 1021-23 (2005).  Plaintiffs' burden to plead, and prove falsity cannot be satisfied, as a

24  matter of law, if the challenged statements are substantially true, that is, if "the substance, the

25  gist, the sting, of the libelous charge [is] justified."  *Masson v. New Yorker Magazine, Inc.*, 501

26  U.S. 496, 517 (1991) (citation omitted).  In evaluating whether challenged statements are

27  substantially true, a court must examine whether a statement "would have a different effect on

28                                    9

the mind of the reader from that which the pleaded truth would have produced." *Id.* (citation omitted).  Whether the plaintiff has satisfied this constitutional requirement is for the court to decide as a matter of law.  *Id.*; *Reader's Digest Ass'n v. Superior Ct.*, 37 Cal. 3d 244, 261 (1984) (citing *Sullivan*, 376 U.S. at 271-72).  Because the subject matter of Hearst's reporting – a public controversy involving a candidate for the U.S. House of Representatives that caused some supporters of the candidate to reconsider their endorsements – is a matter of fundamental public concern to voters, Plaintiffs bear the burden of proving that each alleged defamatory statement is false.  *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1382 (1999).  For the reasons discussed below, they cannot meet this standard as a matter of law.

As an initial matter, Plaintiffs fail to plead that any specific statement published by Hearst was false.  Rather, Plaintiffs plead generally that they were defamed merely by the publication "of an article containing" Croydon's allegations that Buttar sexually harassed her.  Compl. ¶¶ 2, 56.  In an action for libel, such generalized pleading is insufficient, as a matter of law, to identify the complained of allegedly defamatory statements.  *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (a plaintiff must plead "the precise statements alleged to be false and defamatory, who made them and when"); *see also Glassdoor, Inc. v. Superior Ct.*, 9 Cal. App. 5th 623, 636 (2017) (the court "must determine whether a prima facie showing of actionable statements has been made," noting that it "is impossible to perform such a task without knowing the exact statements on which liability is predicated"); *Sullivan*, 376 U.S. at 285 (courts must review the actual statements alleged to be defamatory to determine whether they are "of a character which the principles of the First Amendment . . . protect" (citations omitted)).

Even if Plaintiffs' generalized pleading were sufficient to identify a specific allegedly offending statement, which it is not, Plaintiffs' claims must nevertheless fail because they do not sufficiently plead that the gist or sting of the challenged Articles "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 517 (citation omitted); *Partington v. Bugliosi*, 56 F.3d 1147, 1161 (9th Cir. 1995) ("in

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

determining the 'gist' or 'sting' of a newspaper article [to assess whether it is actionable, a court] must look at the highlight of the article, the pertinent angle of it") (alteration in original) (citation and emphasis omitted).  To determine the effect of an allegedly libelous statement on a reader, a court must look at the allegedly defamatory statement in the context of the whole publication of which it is a part.  *Issa v. Applegate*, 31 Cal. App. 5th 689, 713-14 (2019) (quoting *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998) ("[A] defamatory meaning must be found, if at all, in a reading of the publication as a whole.  Defamation actions cannot be based on snippets taken out of context.")); *Selleck v. Globe Int'l Inc.*, 166 Cal. App. 3d 1123, 1131 (1985) (a court evaluating a claim of defamation by statements may not separate the article into segments, but rather the article "must be read as a whole in order to understand its import and the effect that it was calculated to have on the reader").

Plaintiffs base their defamation claim on just one component of Hearst's reporting: the inclusion of Croydon's claims in their reporting about the public controversy sparked by those claims.  But they ignore the context of the articles about which they complain, which, when read in their entirety, truthfully, fairly and impartially reported on events that had already occurred and which were relevant to this matter of significant public interest related to a candidate seeking election to Congress.  Hearst's First Article reported on (a) the fact that allegations regarding Buttar were made in Croydon's Essay, a fact pled by Plaintiffs (Compl. ¶ 16); (b) that Buttar had *already* issued a denial of those allegations in which he explicitly stated that "[e]very survivor must be heard and *I hope to be allowed the same opportunity to be heard as well*" (emphasis added) (Compl. ¶ 18; Ibarguen Decl. Ex. A), and (c) that some political organizations and others who had previously voiced public support for Buttar's candidacy had already publicly reconsidered that support in light of the allegations, a reality that Buttar acknowledged *before* Hearst had published on this matter.  Ibarguen Decl. Ex. A ("Buttar said, 'I invite their examination of the issues and our campaign welcomes any scrutiny.'").  Hearst's Follow-up Article reported on these same topics in light of the Open Letter, which was published by Buttar supporters several days *after* the controversy first arose, and included statements of support from

several individuals who knew Buttar, vouched for his high integrity and character.  Compl. ¶ 38; Ibarguen Decl. Ex. A.  Read in their entirety, as a court's evaluation of a defamation claim must be, the Articles are substantially true, and Plaintiffs do not plead facts that support the defamation claim.  *See, e.g.*, *Ward v. News Grp. Int'l, Ltd.*, 733 F. Supp. 83, 84-85 (C.D. Cal. 1990) (dismissing defamation claim based on republication of an alleged libel where, considering article as a whole, news report accurately and neutrally reported on the allegedly libelous statements made about a public figure and where publication included plaintiff's denial of the allegations).

Hearst's Reporting on Croydon's allegations and the public reactions to them was plainly a matter of public interest as it related to public discussion of the character and qualifications of a candidate for public office.  *Vogel*, 127 Cal. App. 4th at 1015; *Conroy v. Spitzer*, 70 Cal. App. 4th 1446, 1451 (1999); *Matson*, 40 Cal. App. 4th at 548.  Plaintiffs do not plead otherwise, nor could they based on the facts they do plead: that Buttar issued a response denying the allegations (Compl. ¶ 18); that Buttar's critics "immediately and consistently seized upon" Croydon's allegations (Compl. ¶ 49); that various other news publications reported – many on the same day – about the substance of the allegations and the related fallout (Compl. ¶¶ 27-28, 37, 39, 50); and that a group of individuals who questioned Croydon's credibility subsequently published an open letter regarding the allegations several days later, demonstrating the continuing interest in this public controversy (Compl. ¶ 38).

Plaintiffs also do not plead that the Articles contained any factual inaccuracies in their account of the *substance* of Croydon's allegations (apart from their general assertion that the allegations themselves were false), nor do they allege that Hearst's reporting on Buttar's denial of the allegations contained any factual errors.  Even if they had pleaded such factual errors, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"  *Vogel*, 127 Cal. App. 4th at 1021 (quoting *Masson*, 501 U.S. at 516-17); *Colt v. Freedom Commc'ns, Inc.*, 109 Cal. App. 4th 1551, 1558 (2003) (alleged factual

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1  errors are not actionable defamation unless the inaccuracies are of "such a substantial character"

2  as to have a "different effect on the reader" (citation omitted)).

3        Indeed, Plaintiffs' pleaded facts that various other news outlets reported on this same

4  issue – Croydon's allegations – further demonstrates how little merit exists in their central claim

5  that they were defamed by Hearst because "it published Ms. Croydon's false allegations that Mr.

6  Buttar sexually harassed her."  Compl. ¶ 56.  They do not assert, for example, that they were

7  defamed by *Bay Area Reporter*'s publication of the same day despite the fact that its reporting

8  *also* included the substance of Croydon's allegations (*see* Ibarguen Decl. Ex. C), nor by *The*

9  *Intercept*'s publication of the allegations several days later.  *See* Ibarguen Decl. Ex. D.  Instead,

10  they suggest that the Articles should have included other allegations by particular supporters of

11  Buttar – people who they fail to plead had <u>*any*</u> knowledge as to the truth of the allegations at the

12  heart of the public controversy at issue – who would have stated that Croydon had a history of

13  making false allegations against others.  Compl. ¶ 43.  In effect, Plaintiffs suggest *their* editorial

14  decisions about *how* to cover this issue – not whether it should have been reported at all – should

15  be substituted for the editorial decisions made by Hearst.  Such an intrusion into the editorial

16  process and choices about what a newsgatherer publishes are plainly unconstitutional, and have

17  been roundly rejected by the courts.  *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241,

18  258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to

19  limitations on the size and content of the paper, and treatment of public issues and public

20  officials—whether fair or unfair—constitute the exercise of editorial control and judgment.").

21        Even so, Plaintiffs plead only conclusory allegations that the omission of these

22  individuals who lacked specific knowledge about the matter in controversy created a defamatory

23  meaning in Hearst's Articles.  Nowhere in the Complaint do Plaintiffs plead that any of their

24  preferred sources could have offered anything but their own speculation about the truth of

25  Croydon's claims.  For example, the *Bay Area Reporter* article discussed by Plaintiffs at

26  Paragraphs 27-28 of the Complaint quotes one individual as stating the opinion that there was

27  "'absolutely no merit' to Croydon's claims," but it reflects that this opinion was based on the

28

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

speaker's views about unrelated conduct by Croydon, and makes no assertion that the speaker had direct knowledge relevant to establishing the truth or falsity of Croydon's claims about Buttar.  The same is true of the article published by *The Intercept* which the Complaint quotes as reporting that "several people who recounted having disturbing interactions with Croydon that caused them to question her credibility" but failing to suggest that those people had any specific knowledge of the falsity of Croydon's claims against Buttar.  Compl. ¶ 37.  Even the Open Letter lacks any assertion of knowledge about the truth or falsity of Croydon's claims about Buttar.  Compl. ¶ 38.  As such, Plaintiffs fail to demonstrate through their pleading that the inclusion of the speculative beliefs of these individuals about Croydon's credibility would have created a "different effect on the reader."  *Colt*, 109 Cal. App. 4th at 1558 (citation omitted).  Regardless, a defamation claim cannot be proven by "scrutinizing what is not said to find 'a defamatory meaning which the article does not convey to a lay reader.'"[1]  *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803 (1980) (quoting *Mullins v. Thieriot*, 19 Cal. App. 3d 302, 304 (1971)).

Notably, Plaintiffs also do not plead that Hearst's Reporting presented Croydon's allegations of sexual harassment as statements of fact that Buttar actually harassed Croydon; nor could they, because Hearst's Reporting does not assert or imply that Croydon's allegations were anything more than her unproven claims, which were disputed by Buttar.  Nevertheless, even if Hearst's Articles were read as presenting Croydon's allegations as true – which they do not – such a conclusion would be nonactionable opinion because all of the facts supporting such a conclusion are disclosed in Hearst's Articles.  *Thomas v. L.A. Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1015 (C.D. Cal. 2002) (granting anti-SLAPP motion where article "merely states 'opinion[s] on matters of public concern that do not constitute or imply a provable factual

---

[1] Plaintiffs also suggest that Hearst's Follow-up Article was misleading because it "portrayed [individuals who defended Buttar's ethics and integrity] as Mr. Buttar's friends, when they are fiercely independent political activists."  Compl. ¶ 42.  Even if the individuals quoted in the Follow-up Article had been presented as friends of Buttar, Plaintiffs fail to plead any facts that would support the conclusion that such a characterization was defamatory of Buttar or of his Campaign.  Similarly, Plaintiffs' bald assertion that the Follow-up Article was misleading because it failed to include a hyperlink to the Open Letter – despite acknowledging that Hearst had reported on the content of the Open Letter (Compl. ¶ 44) – is misguided and, in any event, insufficient to support their defamation claim.

14

1  assertion'" (quoting *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995), *aff'd*, 45

2  F. App'x 801 (9th Cir. 2002)); *Partington*, 56 F.3d at 1156-57 ("[W]hen an author outlines the

3  facts available to him, thus making it clear that the challenged statements represent his own

4  interpretation of those facts and leaving the reader free to draw his own conclusions, those

5  statements are generally protected by the First Amendment."); *see also Thomas*, 189 F. Supp. 2d.

6  at 1015 ("[B]ecause the reader is free to draw his or her own conclusions based upon those facts,

7  this type of statement is not actionable in defamation" (quoting *Partington*, 56 F.3d at 1156)).

8         For all of these reasons, Hearst's Reporting on this public controversy is substantially

9  true, and Plaintiffs fail to meet their burden of pleading falsity.

10     **2.**  __Plaintiffs Did Not Adequately Demand a Correction or Plead Compensable__
       __Damages as Required by California Law.__

11

12     California's correction statute establishes several requirements for a plaintiff seeking to

13  recover general, special or exemplary damages in connection with an alleged libel published by a

14  news publication such as Hearst's *San Francisco Chronicle*.  Plaintiffs fail to satisfy any of those

15  requirements and they are barred from recovering any money damages.

16     As a threshold matter of law, under California Civil Code § 48a(b), a libel plaintiff

17  seeking to recover general or exemplary damages is required to serve written notice to the

18  publisher of an alleged libel within 20 days of knowledge of the publication, specifying the

19  allegedly libelous statements and demanding correction.  Failure to serve such a specific and

20  timely demand of correction limits a plaintiff's recovery, as a matter of law, to recovery of

21  special damages.  Special damages are defined in the statute as "damages that plaintiff alleges

22  and proves that he or she has suffered in respect to his or her property, business, trade,

23  profession, or occupation, including the amounts of money the plaintiff alleges and proves he or

24  she has expended as a result of the alleged libel, and no other."  Cal. Civ. Code § 48a(d)(2);

25  *Freedom Newspapers, Inc. v. Superior Ct.*, 4 Cal. 4th 652, 654-56 (1992); *Piping Rock Partners,*

26  *Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013) (noting that special

27  damages are actual out-of-pocket losses and must be pled with specificity).  Where a plaintiff

28

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

fails to serve a correction demand and also fails to adequately plead special damages, the claims

fail on their face and must be stricken under the anti-SLAPP statute. *Anschutz Ent. Grp. v.*

*Snepp*, 171 Cal. App. 4th 598, 643 (2009) (dismissing defamation claims under anti-SLAPP

where no legally enforceable correction demand was served by the plaintiff and where special

damages were pled only through generalized allegations of indeterminate damages and plaintiff

"presented no proof of special damages").

Here, neither Buttar nor the Buttar Campaign made a correction demand as required

under § 48a. The Complaint fails to identify *any* direct communication between Buttar and

Hearst in connection with its reporting on this issue that constitutes a "written notice specifying

the statements claimed to be libelous and demanding that those statements be corrected." Cal.

Civ. Code § 48a(a). The only communication Plaintiffs allege was sent to Hearst after

publication of its July 21 Article that they allege might have satisfied this requirement is the

Request for Follow-Up Coverage, which, based on Plaintiffs' own description, was sent directly

to a reporter (not the publisher, as required by § 48a), and "requested that the *Chronicle* correct

the Original Piece by, *inter alia*, interviewing individuals 'closer to this situation' (such as Dr.

Flowers or Ms. Zundmanis)." Compl. ¶ 30. Although Plaintiffs selectively quote the Request

for Follow-Up Coverage and do not attach the full communication to their Complaint, what they

do include tellingly reveals that the communication failed to demand any correction of Hearst's

First Article consistent with the strict requirements of Cal. Civ. Code § 48a, and, at most, that it

sought follow-up coverage of this matter of public interest in the form of interviews with third

parties representing "'a number of voices' [that] had been 'left out' from the *Chronicle's* story." [2]

---

[2] The Complaint also falls short of pleading that the Request for Follow-Up Coverage satisfies
the correction demand requirements of Civil Code § 48a for several other reasons. Plaintiffs fail
to plead: (a) that the communication identified the specific allegedly defamatory statements at
issue and demanded their correction; (b) that the purported correction demand was served on the
publisher; or (c) that the communication identified a party in interest on behalf of whom the
purported correction demand was being made. Each of these failures provides an independent
basis to find that the July 22 Email, as a matter of law, fails to satisfy the requirements of the
correction statute. *See Freedom Newspapers*, 4 Cal. 4th at 654-56 (Section 48a(a) requires that a
plaintiff "demand[] that [specific libelous statements] be corrected"); *Field Research Corp. v.
Superior Ct. of S.F.*, 71 Cal. 2d 110, 114 (1969) (holding that Section 48a, by its terms, requires
service of a correction demand on "the owner or operator of the newspaper . . . rather than the

16

Compl. ¶ 30.  Because the Complaint fails to plead compliance with the correction statute, Plaintiffs are barred, as a matter of law, from recovering general or exemplary damages.[3]

Plaintiffs are further foreclosed from any recovery in this action because they fail to plead any concrete and quantifiable injury, much less damages sufficient to satisfy the minimum requirements for pleading special damages.  Plaintiffs make only generalized allegations of injury purportedly suffered by Buttar individually, and make *no* allegations of injury specific to the Campaign.  Compl. ¶¶ 51, 53 (alleging Hearst's reporting caused injury to "*Buttar's* ethics and integrity, harmed *his* professional livelihood and personal relationships, slashed *his* speaking and writing opportunities, and gravely damaged the public's perception of *his* fitness to hold political office" and "effectively deprived [*Buttar*] of the ability to speak publicly about two critical issues amidst a global pandemic and ominous wildfires: healthcare policy and climate justice.") (emphasis added)).  But such general and speculative allegations are insufficient to plead special damages.  *Gang v. Hughes*, 111 F. Supp. 27, 29 (S.D. Cal. 1953) ("[G]eneral allegation of loss of business" is insufficient to show special damages, for which "plaintiff must allege the specific manner in which he lost business as a result of the defamation"); *Pridonoff v. Balokovich*, 36 Cal. 2d 788, 792 (1951) ("general allegation of the loss of a prospective employment, sale, or profit will not suffice").

Furthermore, even if Plaintiffs had pled injury with sufficient specificity, they fail to sufficiently plead that *any* alleged damages are attributable specifically to Hearst's Reporting on this public controversy.  To the contrary, the facts they do plead reveal the impossibility of demonstrating that any specific damages Plaintiffs might have plausibly pled resulted solely from Hearst's reporting.  For example, the Complaint alleges: (1) Hearst's Reporting was based on and followed publication of Croydon's Essay detailing her allegations (Compl. ¶ 16); "Ms.

---

originator of the defamatory statements."); *Anschutz*, 171 Cal. App. 4th at 642 (Section 48a requires that the plaintiff serve a retraction demand or, at minimum, be named in the demand).
[3] Even if Plaintiffs had served a valid demand for correction, which they did not, in order to recover exemplary damages, they would be required, as a matter of law, to prove that Hearst acted with actual malice in publishing its reporting about the allegations made against Buttar. Cal. Civ. Code § 48a(3).  For the same reasons explained below, Plaintiffs cannot prove actual malice on the facts pled in the Complaint.

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' COMPLAINT
CASE NO. 3:21-CV-05566-EMC

Croydon's false accusations were immediately and consistently seized upon by critics across the political spectrum" (Compl. ¶ 49); and because several other publications – the *Bay Area Reporter*, *The Intercept*, *Bay Guardian*, *48 Hills* and *Mission Local* – all reported on the allegations made against Buttar (Compl. ¶¶ 27, 37, 39, 49).   Plaintiffs cannot, as a matter of law, prove that any injury, much less any specific damages, were suffered directly as a result of Hearst's Reporting on the same information about matter of public interest.  Cal. Civ. Code § 48(a)(d)(3); *Anschutz*, 171 Cal. App. 4th at 643 (dismissing defamation action pursuant to anti-SLAPP where Plaintiff fails to plead special damages with specificity and presented no evidence of such losses).

   **3.   Plaintiffs Cannot Show That Any Statement Was Published with Actual Malice.**

   Plaintiffs also fail to state a claim for defamation for the independent reason that the Complaint fails to plead facts that would make their otherwise conclusory allegation of "actual malice" plausible, as they are required to do as a matter of law – much less facts that would satisfy the "clear and convincing" standard applicable to any libel action brought by a public figure.  *Sipple*, 71 Cal. App. 4th at 247; *Reader's Digest*, 37 Cal. 3d at 256 ("If the person defamed is a public figure, he cannot recover unless he proves, by clear and convincing evidence, that the libelous statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (quoting *Sullivan*, 376 U.S. at 279-80)); *Conroy*, 70 Cal. App. 4th at 1454 (same); *Kieu Hoang v. Phong Minh Tran*, 60 Cal. App. 5th 513, 537 (2021) (finding insufficient evidence of actual malice where reporter had no reason to believe source was untrustworthy and where evidence presented by alleged victim of defamation did not show "obvious reasons to doubt the veracity of [the source] or the accuracy of [the] reports." (quoting *Reader's Digest*, 37 Cal. 3d at 257)); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 117 (university football coach, a public figure defamation plaintiff, could not show a likelihood of success on libel claim where he failed to show actual malice by clear and convincing evidence).

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1    Plaintiffs are undeniably public figures and therefore bear the heavy burden of satisfying

2    the actual malice standard applicable to this action; their Complaint demonstrates unequivocally

3    that they cannot meet this burden even at the threshold pleading stage.  The only facts Plaintiffs

4    plead to support their actual malice burden boils down to (a) failure by Hearst to contact some

5    individuals identified by Plaintiffs who, according to Plaintiffs, believed Croydon – based on

6    unrelated conduct – to be untrustworthy, and (b) Hearst's failure to include those individuals'

7    purely speculative views about the credibility of Croydon's allegations against Buttar.[4]  Compl.

8    ¶¶ 58, 59.  This is insufficient, as a matter of law, to satisfy Plaintiffs' burden.

9    *First*, Plaintiffs cannot plead actual malice by relying on a purported failure to contact

10   certain individuals who, based on the facts pled in the Complaint, lacked *any* specific or actual

11   knowledge that Croydon's allegations against Buttar were false.  Though the Complaint alleges

12   that these individuals *subjectively* believed – based on their own interactions with her or with

13   Buttar – that Croydon's allegations were not credible, the Complaint fails to allege any facts

14   indicating that these individuals (or anyone else not contacted by Hearst) could offer actual

15   knowledge that the specific allegations against Buttar were false.  *See, e.g.*, Compl. ¶ 21

16   (alleging Plaintiffs' informed Hearst of a person willing to speak to Hearst "who can speak about

17   [Mr. Buttar's] character and other claims [Croydon] has made in the past that are *false* –

18   including one who alleges that [Croydon] also made *false claims about her husband*") and ¶ 30

19   (requesting that Hearst interview "individuals 'closer to this situation' (such as Dr. Flowers or

20   Ms. Zundmanis)" but failing to plead that these or other individuals had *actual* knowledge that

21   Croydon's allegations were false); ¶¶ 34-35 (alleging an email sent by Chris Sampson to Hearst

22   "stated that Ms. Croydon was a 'pathological liar' who had 'harassed' one of his friends

23   'repeatedly in private texts to the point of [his] friend considering suicide'" but failing to plead

24

25   ---
[4] Plaintiffs also baselessly insinuate that Hearst's reporting on the fact that allegations of sexual
26   harassment were made publicly against Buttar and that they had drawn public reaction was
     somehow motivated by Buttar's religion, race or national origin.  Compl. ¶¶ 46-47.  In addition
27   to being vague and unspecific, these bald and conclusory assertions are wholly unsupported by
     any facts pled in the Complaint, inconsistent with the content of the complained-of Articles, and
28   insufficient to satisfy Plaintiffs' burden of proving actual malice.

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

that Sampson knew any facts relating to the veracity of Croydon's claims against Buttar).

Simply put, Plaintiffs offer no evidence that any of the individuals they identify knew, as a

matter of fact, whether Croydon's allegations were true, and that, at most they could only have

provided a subjective opinion that the allegations were not credible.[5]

*Second*, a failure to investigate by contacting cherry-picked sources proposed by

Plaintiffs is irrelevant to a determination of whether the statements at issue were published with

knowledge of their falsity or reckless disregard for their truth.[6]  *Reader's Digest*, 37 Cal. 3d at

247 ("The failure to conduct a thorough and objective investigation, standing alone, does not

prove actual malice, nor even necessarily raise a triable issue of fact on that controversy"); *see*

*also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("[F]ailure to

investigate before publishing, even when a reasonably prudent person would have done so, is not

sufficient to establish reckless disregard").

For these reasons, Plaintiffs fail to adequately plead Hearst acted with "actual malice" in

its reporting on this public controversy, and fall well short of the applicable "clear and

convincing" standard.  *McGarry*, 154 Cal. App. 4th at 114 (actual malice standard requires

showing by plaintiff of "evidence of actual knowledge of the falsity or reckless disregard for its

falsity must be of such a character as to command the unhesitating assent of every reasonable

mind") (citation and quotation marks omitted); *Harte-Hanks Commc'ns*, 491 U.S. at 688; *St.*

---

[5] The Complaint also pleads other facts about these individuals' statements elsewhere that similarly are insufficient to satisfy their pleading burdens as a matter of law.  *See* Compl. ¶ 38 (quoting from an "Open Letter Regarding Ms. Croydon's Credibility," failing to allege the authors had any knowledge specific to Croydon's allegations against Buttar); ¶ 37 (quoting from a July 23, 2020 article published by *The Intercept* which referred to "several people who recounted having disturbing interactions with Croydon that caused them to question her credibility" but which does not reflect those people had any specific knowledge of the falsity of Croydon's claims against Buttar); ¶¶ 27-28 (quoting from a July 21, 2020 article in the *Bay Area Reporter*, which published the subjective assertion of Martine Zundmanis that there was "'absolutely no merit' to Croydon's claims," but basing that opinion on unrelated interactions with Croydon and Buttar and failing to identify any specific knowledge that Croydon's claims against Buttar were false).

[6] Furthermore, all of the facts pled to support the proposition that Hearst had actual malice emanate from communications that Plaintiffs plead occurred after Hearst published its First Article.  *Compare*, Ibarguen Aff. Ex. A (showing publication of Hearst's First Article at 8:19 p.m.) *with* Compl. ¶ 21 (referring to the Request for Follow-Up Coverage sent at 8:30 p.m.).

20

1  *Amant v. Thompson*, 390 U.S. 727, 731 (1968) ("[R]eckless conduct is not measured by whether

2  a reasonably prudent man would have published, or would have investigated before publishing.

3  There must be sufficient evidence to permit the conclusion that the defendant in fact entertained

4  serious doubts as to the truth of his publication.").

### 4. Plaintiffs' Derivative Claim Under Cal. Bus. & Prof. Code §§ 17200, et seq. Also Fails.

7          Plaintiffs' Unfair Competition Law ("UCL") claim, as pleaded, is entirely derivative of

8  and relies entirely on their failed defamation claim.  Compl. ¶ 66.  Because the UCL claim relies

9  entirely on and is derivative of the defamation claim, the UCL claim must be dismissed for the

10 same reasons as Plaintiffs' failed defamation claim.  *Hawran v. Hixson*, 209 Cal. App. 4th 256,

11 277 (2012) (because UCL claims are derivative of alleged violations of other laws, a UCL claim

12 based on the same allegedly defamatory statements "stands or falls with that underlying claim.").

### VI.     PLAINTIFF BUTTAR CAMPAIGN FAILS TO STATE A CLAIM

14         Further illustrating the frivolous nature of this lawsuit, Plaintiff Buttar Campaign fails to

15 plead that *it* was the subject of any alleged defamatory statement, and further fails to plead that *it*

16 suffered any injury independent of the purported injury to Buttar.  Thus, the Buttar Campaign

17 fails to state a claim upon which relief could be granted, and its claims should be dismissed.

18         *First*, it is black-letter federal and state law that a statement cannot defame a plaintiff if it

19 does not identify the plaintiff.  *Sullivan*, 376 U.S. at 288 (federal constitutional law requirement);

20 *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (1986) ("To allow a plaintiff who is not

21 identified, either expressly or by clear implication, to institute such an action poses an

22 unjustifiable threat to society" and noting that, without such a requirement, the damage to the

23 news media would be significant and would chill its coverage of topics of general concern).

24 Here, the Complaint is devoid of any factual pleading – whether originating with Croydon's

25 allegations or contained in Hearst's reporting on them – that is "of and concerning" the Buttar

26 Campaign.  In the absence of such a statement, the Buttar Campaign fails to plead any basis for

27 its defamation claim, and the claim must fail as a matter of law.

28

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1     *Second*, even if the Buttar Campaign had sufficiently pled an allegedly defamatory

2   statement concerning it, the Complaint nevertheless fails to identify any concrete injury suffered

3   specifically by the Buttar Campaign; as a result, the Buttar Campaign fails to plead that it meets

4   the threshold requirement for establishing standing to sue, and its claims should be dismissed for

5   lack of standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016) ("To establish injury in

6   fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that

7   is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'")

8   (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Plaintiffs fail to plead even

9   that the Buttar Campaign has any independent reputation capable of being defamed (much less

10  that the campaign vehicle's reputation was in any way defamed by Hearst's Reporting).  Compl.

11  ¶ 13 (describing the Buttar Campaign as an "unincorporated organization [that] constituted

12  [Buttar's] Congressional campaign"); Compl. ¶¶ 51, 53, detailing alleged suffered by Buttar

13  individually, but none by the Buttar Campaign.  Having failed to plead some injury, the Buttar

14  Campaign's claim must be dismissed as a matter of law.  *See Donald J. Trump for President,*

15  *Inc. v. Cegavske*, 488 F. Supp. 3d 993 (D. Nev. 2020) (dismissing action brought by campaign

16  committee for lack of standing where campaign failed to show it suffered concrete injury).

17       The inclusion of the Buttar Campaign as a plaintiff in this action appears designed solely

18  to multiply Buttar's purported – and insufficiently pled – damages in an effort to chill core First

19  Amendment protected conduct: news reporting informing the voting public on matters relevant

20  to their decisions about candidates for elected office.  As such, it is an example of the kind of

21  lawsuit the anti-SLAPP law specifically sought to "nip . . . in the bud" (*Braun*, 52 Cal. App. 4th

22  at 1042) and punish with an award of attorneys' fees.  Cal. Civ. Proc. Code § 425.16(c)(1).

23  **VII.   CONCLUSION**

24       Hearst respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety

25  with prejudice under Fed. R. Civ. P. 12(b)(6) and California's anti-SLAPP law, and award

26  Hearst its mandatory fees and costs incurred in connection with this motion, in an amount to be

27  determined by future motion.

28                                    22

DATED: December 2, 2021

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE

THE HEARST CORPORATION
JONATHAN R. DONNELLAN (*pro hac vice*)
DIEGO IBARGUEN (*pro hac vice*)

By:        /s/ Diego Ibarguen

*Attorneys for Defendant Hearst Communications, Inc.*

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
COMPLAINT
CASE NO. 3:21-CV-05566-EMC