THOMAS R. Burke (CA State Bar No. 141930)
  thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

JONATHAN R. DONNELLAN
  jdonnellan@hearst.com (*pro hac vice*)
DIEGO IBARGUEN
  dibarguen@hearst.com (*pro hac vice*)
HEARST CORPORATION
300 W. 57th Street, 40th Floor
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000

Attorneys for Defendant
HEARST COMMUNICATIONS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHID BUTTAR FOR CONGRESS COMMITTEE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> HEARST COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 3:21-cv-05566-EMC <br><br> **DEFENDANT HEARST COMMUNICATIONS, INC.'S NOTICE OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> **[Cal. Civ. Proc. Code § 425.16; Fed. R. Civ. P. 12(b)(6)]** <br><br> Date: December 1, 2022 <br> Time: 1:30 p.m. <br> Place: Courtroom 5, 17th Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 1, 2022, at 1:30 p.m. in Courtroom 5, 17th

Floor of the United States District Court for the Northern District of California, located in the

San Francisco Courthouse at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant

Hearst Communications, Inc., ("Hearst") will and hereby does move this Court for an order

dismissing Plaintiffs' claims against it pursuant to California Code of Civil Procedure § 425.16

1

and Fed. R. Civ. P. 12(b)(6), and for an order granting Hearst its attorneys' fees pursuant to Cal. Civ. Proc. Code § 425.16(c).

   As set forth in more detail in the attached memorandum of points and authorities, the Court should order the dismissal of Plaintiffs' claims against Hearst because:

   1.    California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute") applies to each of Plaintiffs' claims against Hearst because they all arise from Hearst's reporting in connection with a public issue or an issue of public interest (a public controversy sparked by allegations of sexual harassment made against a candidate for the U.S. House of Representatives, the candidate's reaction to the allegations, and the public reaction to them), all published in a public forum. *See* Cal. Civ. Proc. Code § 425.16(e)(3) and (4); Memorandum ("Mem.") § IV.

   2.    Because the anti-SLAPP statute applies to all of Plaintiffs' claims against Hearst, the burden shifts to Plaintiffs to establish a probability that they will prevail as to each claim. Cal. Civ. Proc. Code § 425.16(b)(1); Mem. § IV.  Because Hearst challenges the legal sufficiency of Plaintiffs' claims, Plaintiffs must show they have alleged sufficient facts to raise a right to relief above the speculative level.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1446 (2019); *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).  Plaintiffs cannot meet their burden.

   3.    Plaintiffs fail to identify specific statements they allege are defamatory, which is required under settled California law.  Even if Plaintiffs had sufficiently pled that they were defamed by Hearst's reporting on a public controversy involving a candidate for elected office, Plaintiffs cannot prove that Hearst's published statements on this matter are false; to the contrary Hearst's reporting on this matter accurately and impartially recounts the nature of allegations made against a candidate for election to the U.S. House of Representatives, the candidate's denial of those allegations, and the public reaction to the allegations.  Hearst's published statements on this matter of public interest are substantially true, and, accordingly, Plaintiffs fail to sufficiently plead falsity.  *See* Mem. § V(1).

   4.    Plaintiffs will be unable to prove damages.  Plaintiffs have insufficiently pled that

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

they suffered any special damages, and the First Amended Complaint does not adequately plead that they are entitled to any other damages because they failed to demand a correction, as required by California Civil Code § 48a.  *See* Mem. § V(2).

5.      Even accepting all of Plaintiffs' facts as true, the First Amended Complaint nevertheless fails to sufficiently plead any facts that make plausible their allegation that Hearst's reporting on this matter was published with actual malice – *i.e.*, with knowledge that the statements were false or with reckless disregard as to whether they were true – much less facts that could satisfy the "clear and convincing" standard applicable, as a matter of law, to defamation actions brought by public figures.  *See* Mem. § V(3).

6.      Plaintiffs' claim of unfair business acts and practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*., is derivative of and turns entirely on Plaintiffs' defamation claim. Because their defamation claim fails, so, too, must their claim under § 17200.  *See* Mem. § V(4).

Accordingly, this Court should grant Hearst's motion and dismiss Plaintiffs' claims, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) and Cal. Civ. Proc. Code § 425.16(b)(1), and it should award Hearst its attorneys' fees and costs incurred in defending this meritless suit, pursuant to Cal. Civ. Proc. Code § 425.16(c), in amounts determined by subsequent motion.

This motion is based on this notice; the attached memorandum of points and authorities; the concurrently filed request for judicial notice; the concurrently filed declaration of Diego Ibarguen with Exhibits A-I; any other matters of which this Court may take judicial notice; all pleadings, files and records in this action; and such other argument as this Court may receive at this motion's hearing.

DATED:  September 23, 2022

THOMAS R. BURKE
DAVIS WRIGHT TREMAINE LLP

JONATHAN R. DONNELLAN (*pro hac vice*)
DIEGO IBARGUEN (*pro hac vice*)
HEARST CORPORATION

By: ___/s/ Diego Ibarguen_____

Attorneys for Defendant
HEARST CORPORATION

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST
AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

    I.      INTRODUCTION .................................................................................1

    II.     STATEMENT OF FACTS ....................................................................3

    III.    STANDARD OF REVIEW ....................................................................6

    IV.    SECTION 425.16 APPLIES TO PLAINTIFFS' CLAIMS.................................8

    V.     THE FAC FAILS TO PLEAD SUFFICIENT FACTS TO
          STATE A CLAIM FOR DEFAMATION ...............................................9

         1.     Hearst's Published Statements are Substantially True...............................9

         2.     Plaintiffs Did Not Adequately Demand a Correction or Plead
             Compensable Damages as Required by California Law...........................15

         3.     Plaintiffs Cannot Show That Any Statement Was Published
             with Actual Malice.......................................................................19

         4.     Plaintiffs' Derivative Claim Under Cal. Bus. & Prof. Code §§
             17200, *et seq*. Fails......................................................................21

    VI.    PLAINTIFF BUTTAR CAMPAIGN FAILS TO STATE A CLAIM.................22

    VII.   CONCLUSION..............................................................................23

i

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST
AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aisenson v. Am. Broad. Co.*,
    220 Cal. App. 3d 146 (1990) ...................................................................................8

*Anschutz Ent. Grp. v. Snepp*,
    171 Cal. App. 4th 598 (2009) ...............................................................16, 17, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................3, 6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................3, 6, 7

*Blatty v. N.Y. Times Co.*,
    42 Cal. 3d 1033 (1986) .........................................................................................22

*Braun v. Chronicle Publ'g Co.*,
    52 Cal. App. 4th 1036 (1997) ..................................................................... *passim*

*Colt v. Freedom Commc'ns, Inc.*,
    109 Cal. App. 4th 1551 (2003) ....................................................................11, 14

*Conroy v. Spitzer*,
    70 Cal. App. 4th 1446 (1999) ..............................................................................19

*Donald J. Trump for President, Inc. v. Cegavske*,
    488 F. Supp. 3d 993 (D. Nev. 2020) ...................................................................23

*Eisenberg v. Alameda Newspapers, Inc.*,
    74 Cal. App. 4th 1359 (1999) ..............................................................................10

*Eva v. Smith*,
    89 Cal. App. 324 (1928) .........................................................................................8

*Finato v. Keith A. Fink & Assocs.*,
    68 Cal. App. 5th 136 (2021) ..................................................................................3

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002) .............................................................................10

*Forsher v. Bugliosi*,
    26 Cal. 3d 792 (1980) ...........................................................................................15

ii

*Freedom Newspapers, Inc. v. Super. Ct.*,
   4 Cal. 4th 652 (1992) ..................................................................................16, 17

*Gang v. Hughes*,
   111 F. Supp. 27 (S.D. Cal. 1953) .................................................................18

*Glassdoor, Inc. v. Super. Ct.*,
   9 Cal. App. 5th 623 (2017) ...........................................................................10

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ......................................................................................21

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ........................................................................7

*Issa v. Applegate*,
   31 Cal. App. 5th 689 (2019) .........................................................................11

*Kaelin v. Globe Commc'ns Corp.*,
   162 F.3d 1036 (9th Cir. 1998) ......................................................................11

*Kieu Hoang v. Phong Minh Tran*,
   60 Cal. App. 5th 513 (2021) .........................................................................19

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................23

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ..................................................................10, 11, 13, 14

*Matson v. Dvorak*,
   40 Cal. App. 4th 539 (1995) ...........................................................................8

*McGarry v. Univ. of San Diego*,
   154 Cal. App. 4th 97 (2007) ...................................................................19, 21

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974) ......................................................................................13

*Mullins v. Thieriot*,
   19 Cal. App. 3d 302 (1971) ..........................................................................15

*Navellier v. Sletten*,
   106 Cal. App. 4th 763 (2003) .........................................................................9

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)............................................................................ *passim*

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ....................................................................11, 15

*Phila. Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) ............................................................................................10

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013) ..............................................................16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ...........................................................................7, 8

*Pridonoff v. Balokovich*,
    36 Cal. 2d 788 (1951) ........................................................................................18

*Reader's Digest Ass'n v. Super. Ct.*,
    37 Cal. 3d 244 (1984) ..........................................................................10, 19, 21

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ...............................................................................7

*Selleck v. Globe Int'l, Inc.*,
    166 Cal. App. 3d 1123 (1985) ...........................................................................11

*Sipple v. Found. For Nat'l Progress*,
    71 Cal. App. 4th 226 (1999) ...........................................................................8, 19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...........................................................................................22

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ...........................................................................................21

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) .........................................................................................9

*Thomas v. L.A. Times Commc'ns, LLC*,
    189 F. Supp. 2d 1005 (C.D. Cal. 2002) .............................................................15

*Underwager v. Channel 9 Austl.*,
    69 F.3d 361 (9th Cir. 1995) ...............................................................................15

*United States v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) .................................................................................5

*Varian Med. Sys., Inc. v. Delfino*,
    35 Cal. 4th 180 (2005) .........................................................................................9

iv

*Vogel v. Felice*,
   127 Cal. App. 4th 1006 (2005) ..................................................................10, 11

*Ward v. News Grp. Int'l, Ltd.*,
   733 F. Supp. 83 (C.D. Cal. 1990) .........................................................................13

*Winter v. DC Comics*,
   30 Cal. 4th 881 (2003) ...........................................................................................6

*Yorty v. Chandler*,
   13 Cal. App. 3d 467 (1970) ....................................................................................8

**Statutes**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* .....................................................................21

Cal. Civ. Code § 48a .......................................................................................... *passim*

Cal. Civ. Proc. Code § 425.16 .............................................................................1, 7, 8, 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).................................................................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' First Amended Complaint fails to introduce any new facts relevant to the surviving claims in this case.  Instead, it repeats, largely verbatim, allegations the Court has already found to be meritless and insufficient to satisfy Plaintiffs' threshold pleading burden; the re-pleading of those same allegations in the Amended Complaint does not change that analysis.

## I.   INTRODUCTION

Candidates for elected office necessarily expose themselves to intense public scrutiny and criticism, not just of their political positions, but also of their qualifications for office, their character and their integrity.  Public discussion of a candidate's fitness for elected office is so fundamental to democracy as to be at the very core of constitutionally protected political speech.  And the press plays a central role in informing the public about the issues and controversies relevant to the decisions they make at the ballot box.  This lawsuit is a misguided effort to punish a newspaper for reporting on precisely such core political concerns.

As the Court will recall, Plaintiffs' original claims in this action, alleging defamation and a derivative violation of California's unfair competition law, arose from two news articles published by Defendant Hearst Communications, Inc.'s ("Hearst") newspaper the *San Francisco Chronicle* (the "*Chronicle*") in July 2020.  The articles reported on allegations that Plaintiff Shahid Buttar ("Buttar"), then a candidate for Speaker Nancy Pelosi's seat in the U.S. House of Representatives, sexually harassed an individual several years earlier.  The *Chronicle*'s articles summarized the substance of these allegations, which were made by Elizabeth Croydon ("Croydon") and published in an online essay on the website *Medium*.  The articles also included Buttar's public denial of those allegations, and they reported on the actions taken in response to the allegations by some who had previously endorsed Buttar's candidacy and others who vouched for Buttar's character and expressed doubts about the allegations.

In granting Hearst's motion to dismiss the original Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) and California's anti-SLAPP statute (Cal. Civ. Proc. Code § 425.16) (ECF No. 27), the Court dismissed all claims in the Complaint, finding, among other things: that the anti-

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST
AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

SLAPP law applies to Plaintiffs' claims (ECF No. 39 (the "Order") at 8); that Plaintiff Buttar was a public figure subject to the heightened "actual malice" standard (*id*. at 9); that Plaintiffs' allegations that they were defamed by Hearst's failure to speak with certain of Plaintiffs' preferred sources regarding their subjective views of Croydon's credibility was insufficient to plead falsity in Hearst's first article reporting on the public controversy (*id*. at 12), and that it was unclear whether the alleged omission in Hearst's second article of challenges made to Croydon's credibility based on unrelated events was sufficient to meet Plaintiffs' pleading burden when considered in the context of the rest of the entire article. *Id*. at 13. Furthermore, the Court found that Plaintiffs failed to sufficiently plead actual malice as to either article (*id*. at 14-17); they failed to plead facts demonstrating compliance with California's correction statute, limiting any potential recovery to special damages (*id*. at 18-19); and that because they had failed to plead any concrete or quantifiable injury or damages, they also had not sufficiently pled special damages and were therefore barred from *any* recovery in this action. *Id*. at 19.

The Court dismissed claims stemming from Hearst's first article with prejudice, finding that any amendment of such claims would be futile, but permitting Plaintiffs to amend their pleading <u>only</u> as to claims stemming from Hearst's second article.

Plaintiffs' First Amended Complaint (hereinafter, "FAC") (ECF No. 46) is frivolous and the facts it pleads, which are nearly identical to the allegations the Court has already found insufficient, betray the lack of merit of its claims. Plaintiffs do not identify any specific statement published by Hearst, as they are required to do by law, that could form the basis of their defamation claim. Rather, they continue to claim that Hearst's reporting should have included the subjective opinions of their preferred sources to cast doubt on the truth of the allegations made against Buttar. But they again plead facts reflecting that those preferred sources had no direct knowledge of the truth or falsity of Croydon's claims. They claim an entitlement to a variety of monetary damages yet fail to plead any injury resulting directly from *Hearst's* reporting, even as they plead that this public controversy was the subject of wide public discussion and that it was reported by many other news outlets. In any event, they are barred as a

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

matter of law from recovering other damages because they do not plead that they demanded a

correction in compliance with California's correction statute.  They allege Hearst reported on this

public controversy with "actual malice," but they fail to plead facts that would make their

otherwise conclusory allegation plausible, as they are required to do under *Twombly* and *Iqbal*,

and also under *Sullivan* and its progeny.  And they name the Shahid Buttar for Congress

Committee ("Buttar Campaign") as a party, despite failing to plead *any* statement published by

Hearst defamed it, and failing to plead with sufficient specificity that the campaign, which exists

solely as a vehicle through which Buttar ran for elected office, suffered any independent injury

or anything but speculative damages.

The FAC, like the original Complaint, fails to plausibly plead a claim upon which relief

can be granted.  For these reasons, Hearst respectfully requests that the Court dismiss Plaintiffs'

claims in their entirety under California's anti-SLAPP statute and Rule 12(b)(6),[1] and that it

award Hearst its mandatory attorneys' fees to be determined by separate motion pursuant to the

anti-SLAPP law.

## II.    STATEMENT OF FACTS

In July 2020, Buttar was a candidate in the November 3, 2020 general election for

California's 12th U.S. Congressional District in the 2020 general election, seeking to unseat U.S.

Rep. Nancy Pelosi, the sitting Speaker of the House.  FAC ¶ 10.  He was ultimately unsuccessful

in this effort.  FAC ¶ 56.

On July 21, 2020, Croydon, an acquaintance of Buttar, published an essay ("Croydon's

Essay") on the web site Medium.com titled "*Shahid Buttar Repeatedly Sexually Harassed Me*."

FAC ¶ 17; Declaration of Diego Ibarguen ("Ibarguen Decl."), Ex. G.  In her essay, Croydon

alleged, among other things, that when she and Buttar were both living in Washington, D.C., in

the early 2000s and were part of the same activism and arts community, Buttar "made [her] feel

uncomfortable"; "repeatedly pursued [her] for sex"; and "let [her] know he was sexually

---

[1] A second anti-SLAPP motion is "an appropriate method to attack an amended complaint
asserting allegations struck by an earlier anti-SLAPP motion."  *Finato v. Keith A. Fink &
Assocs.*, 68 Cal. App. 5th 136, 146 (2021).

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST
AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

available to [her] for years." *Id*.  Croydon's Essay described an instance roughly a decade later in which she said she was "shocked and embarrassed" when, after Croydon discussed her celibacy, Buttar allegedly responded with comments that Croydon wrote made her feel "degraded, nauseated, and revolted that he would mock me in front of friends who looked to me as an outspoken voice for women." *Id*.   At the conclusion of her essay, Croydon expressed the opinion: "We on the left must hold ourselves to a higher standard as we are committed to creating a just and equitable world, free from sexual misconduct, misogyny and bullying. . . . The left can do better than Shahid Buttar." *Id*.

The allegations in Croydon's Essay immediately sparked a public discussion.  FAC ¶ 57.  On the same day, July 21, 2020, the substance of Croydon's allegations and the public discussion of them were the focus of multiple published news reports, including: an article published by the local online news site *Bay Area Reporter* titled, "Political Notebook: Pelosi challenger Buttar accused of sexual harassment, misogyny" (FAC ¶ 28; Ibarguen Decl. Ex. C); an article published by the local online news site *48 Hills* titled, "The end of Shahid Buttar's Campaign – and the lessons" (FAC ¶ 58; Ibarguen Decl. Ex. F); and an article published by the local online news site *Mission Local* titled, "Pelosi challenger Shahid Buttar accused of sexual harassment, misogyny" (FAC ¶ 58; Ibarguen Decl. Ex. E).

Also on July 21, 2020, Hearst published the first of two articles regarding the public controversy sparked by the allegations, titled, "Shahid Buttar, Nancy Pelosi's election opponent, accused of sex harassment" (hereinafter, "Hearst's First Article").  FAC ¶¶ 3, 16.  Hearst's First Article included a statement from Buttar stating that the allegations "are false," describing sexual harassment as "despicable", and affirming that "[e]very survivor must be heard, and I hope to be allowed the same opportunity to be heard as well."  FAC ¶ 19; Ibarguen Decl. Ex. A.  Hearst's First Article reported that two political organizations that had previously endorsed Buttar's candidacy had stated they were reevaluating their endorsements in light of the allegations, and reported that one local elected official reacted to the allegations by having his name removed from Buttar's website and signing "a . . . petition to unendorse him." *Id*.  Acknowledging the

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1  public scrutiny sparked by Croydon's Essay, Buttar also acknowledged that local organizations

2  were then currently evaluating his candidacy in the context of Croydon's allegations, adding, "I

3  invite their examination of the issues and our campaign welcomes any scrutiny." *Id.*

4        About ten minutes after Hearst's First Article was published, a Buttar Campaign

5  representative emailed Hearst at 8:30 p.m. on July 21, 2020, offering to connect the newspaper

6  with "some people who can speak about [Mr. Buttar's] character and other claims [Ms. Croydon]

7  has made in the past that are false – including one who alleges that she also made false claims

8  about her husband.  Would you want to speak with them?  We are reluctant to attack her

9  character out of respect to survivors . . . but they are willing to speak with you."  FAC ¶ 22

10  (alterations in original) (emphasis omitted).  That email did not suggest the people referenced

11  had any direct knowledge regarding Croydon's claims about Buttar.  *Id.*  Early the next morning,

12  at 5:44 a.m. on July 22, 2020, a representative of Buttar's campaign emailed a Hearst reporter

13  asserting that "'a number of voices' had been 'left out'" of Hearst's First Article, and requesting

14  that Hearst interview individuals "closer to this situation" (the "Request for Follow-up

15  Coverage").  FAC ¶¶ 30-31.[2]  The Request for Follow-up Coverage <u>did not</u> assert that any of

16  these individuals had actual knowledge of the truth or falsity of Croydon's claims about Buttar,

17  nor did it demand a correction of Hearst's First Article published the day before.  *Id.*

18        Two days later, on July 24, 2020, a group of 17 individuals published an "Open Letter of

19  Support for Shahid Buttar" (hereinafter, the "Open Letter") on the website *Independent Political*

20  *Report* asserting, among other things, that Croydon's allegations "attempted to draw a different

21  picture of Shahid than the one we know to be true."  FAC ¶ 41; Ibarguen Decl. Ex. H.  The

22  signatories of the Open Letter stated the opinion that they "believe these allegations are false and

23  ─────────────────────────────

24  [2] A copy of the email thread containing the Request for Follow-Up Coverage was previously found by the Court to be incorporated by reference in the Complaint (Order 2 n.1), citing *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (courts may take judicial notice of all "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.").  The FAC again incorporates that same email thread by repeated reference (*see, e.g.*, FAC ¶¶ 18, 19, 22, 23, 30-35); accordingly, to assist the Court's review of this dispositive motion, a copy of the same email thread is attached to the Ibarguen Declaration as Exhibit I.

25

26

27

28

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

ill intentioned," and asserted that, based on unrelated actions they attributed to Croydon, the signatories believed "[s]he is NOT a credible witness." FAC ¶ 41; Ibarguen Decl. Ex. H. Plaintiffs do not allege, nor does the Open Letter contain, any assertions that the signatories of the Open Letter had specific knowledge regarding the truth of Croydon's claims about Buttar. Ibarguen Decl. Ex. H.

On July 25, 2020, Hearst published its second article about the controversy (hereinafter, "Hearst's Follow-Up Article" and together with Hearst's First Article, "Hearst's Articles" or "Hearst's Reporting"), referencing the substance of the Open Letter, and quoting it and several individuals who signed it. FAC ¶ 44; Ibarguen Decl. Ex. B.

At no point did Plaintiffs serve a demand for correction on the publisher of the San Francisco Chronicle consistent with the requirements of California Civil Code § 48a.

Nearly one later, on July 20, 2021, Plaintiffs filed this action alleging they were defamed by Hearst's publication of "an article containing a false allegation that Congressional candidate Shahid Buttar had committed sexual harassment." ECF No. 1, ¶ 2. That Complaint was dismissed by the Court, with leave to replead as to claims stemming from Hearst's Follow-Up Article. Order 21. Plaintiffs subsequently filed their First Amended Complaint. ECF No. 46.

### III.   STANDARD OF REVIEW

As it did with Plaintiffs' original Complaint, Hearst seeks dismissal of this action pursuant to both Rule 12(b)(6) and California's anti-SLAPP law.

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, the Court must be mindful of the chilling effect that costly and protracted litigation can have on speech concerning public officials and candidates for public office. *See, e.g.*, *Winter v. DC Comics*, 30 Cal. 4th 881, 891 (2003) ("because unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable." (alteration and citations omitted)).

The California anti-SLAPP statute broadly protects the discussion of issues of public concern by "nip[ping] SLAPP litigation in the bud by striking offending causes of action[]." *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997). The anti-SLAPP statute provides that any "cause of action against a person arising from any act . . . in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The law applies to, among other things, "any . . . conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Id.* § 425.16(e)(4).

Once a defendant has shown that the anti-SLAPP statute applies to a claim against it, a court must look to the merits of the plaintiff's claim. *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016). Federal courts may consider arguments based on the anti-SLAPP statute at either the motion to dismiss or the summary judgment stage. *See Planned Parenthood*, 890 F.3d at 834. When, as here, "an anti-SLAPP motion to strike challenge[d] only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.* at 834.

Accordingly, the procedural grounds for dismissal under anti-SLAPP are identical to those under Rule 12(b)(6): a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . . [—that is,] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555-56, 570. In determining whether the complaint states a "plausible" claim, this Court need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678; *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the plaintiff fails to satisfy the pleading standards under Rule 12(b)(6), the Court must strike the claim, and award the moving party its attorneys' fees under

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1    California's substantive law, which applies to this action brought in diversity.  *Planned*

2    *Parenthood*, 890 F.3d at 834; Cal. Civ. Proc. Code § 425.16(b)(1), (b)(2), (c)(1).

3    Against these weighty concerns, the *Iqbal*/*Twombly* standard takes on particular

4    relevance.  Under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), to maintain an action

5    for defamation, a public figure such as Plaintiffs in this action must plead that the defendant

6    made the challenged statements with knowledge of their falsity or reckless disregard as to their

7    falsity, and subsequently prove actual malice by "clear and convincing evidence."  *See, e.g.*,

8    *Sipple v. Found. For Nat'l Progress*, 71 Cal. App. 4th 226, 248 (1999) (explaining that in public

9    figure defamation actions, the "clear and convincing" standard requires a showing that the

10   speaker "entertained serious doubts as to the truth of the publication.").

11   **IV.     SECTION 425.16 APPLIES TO PLAINTIFFS' CLAIMS**

12   Here, as the Court has already found (Order 8), the anti-SLAPP statute applies to the

13   claims against Hearst, which arose from its publication of news articles regarding this public

14   controversy, which involved: (1) the published accusations of sexual harassment against Buttar,

15   then a candidate for the U.S. House of Representatives; (2) Buttar's response to those

16   allegations; and (3) the public response to those allegations by several of Buttar's political

17   supporters and others.  *Sipple*, 71 Cal. App. 4th at 240 ("[N]ews reporting is free speech and

18   section 425.16 motions can apply to media defendants in libel actions") (citing *Braun*, 52 Cal.

19   App. 4th at 1044); *see also Matson v. Dvorak*, 40 Cal. App. 4th 539, 548 (1995) ("The right to

20   speak on political matters is the quintessential subject of our constitutional protections of the

21   right of free speech. 'Public discussion about the qualifications of those who hold or who wish to

22   hold positions of public trust presents the strongest possible case for applications of the

23   safeguards afforded by the First Amendment'") (quoting *Aisenson v. Am. Broad. Co.*, 220 Cal.

24   App. 3d 146, 154 (1990)); *Yorty v. Chandler*, 13 Cal. App. 3d 467, 473 (1970) (quoting *Eva v.*

25   *Smith*, 89 Cal. App. 324, 328-30 (1928) ("An individual who seeks or accepts public office

26   invites and challenges public criticism so far as it may relate to his fitness and qualifications[.]

27   The right of criticism rests upon public policy . . . .")).

28

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST
AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

Hearst's Reporting, which accurately reported on a public controversy directly related to a candidate for the U.S. Congress, fits squarely in the scope of "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" that is protected by the anti-SLAPP law.  Cal. Civ. Proc. Code § 425.16(e)(4).  Plaintiffs acknowledge that the allegations sparked immediate and wide-ranging public interest and discussion and even a public response from Buttar himself.  *See, e.g.*, FAC ¶¶ 40, 42, 58 (referencing various news articles reporting on the controversy and underlying allegations; *id.* ¶ 57 ("Ms. Croydon's false accusations were immediately and consistently seized upon by critics across the political spectrum); *id.* ¶ 41 (referencing the Open Letter supportive of Buttar and questioning Croydon's credibility based on unrelated matters); *id.* ¶ 19 (referencing Buttar's issuance of a statement denying the allegations).

As the Court has already found, the anti-SLAPP law applies to Plaintiffs' claims, and the burden shifts to Plaintiffs to demonstrate "a probability of prevailing on the claim."  *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) (citation omitted).  This burden is deliberately stringent, and requires that Plaintiffs must "establish evidentiary support for [their] claim."  *Navellier v. Sletten*, 106 Cal. App. 4th 763, 775-76 (2003) (citation and emphasis omitted).  Specifically, Plaintiffs must demonstrate that the claims are "supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Taus v. Loftus*, 40 Cal. 4th 683, 713-14 (2007) (citations omitted).  If Plaintiffs fail to satisfy its burden, the Court must strike the Complaint.  Cal. Civ. Proc. Code § 425.16(b)(1).  Plaintiffs do not meet their burden of pleading a probability of prevailing against Hearst on these claims.

## V.   THE FAC FAILS TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM FOR DEFAMATION

### 1.   Hearst's Published Statements are Substantially True.

To succeed on a defamation claim, the First Amendment and the anti-SLAPP statute place the burden on Plaintiffs to show that each statement which they claim is defamatory is, in fact, materially false in the context of the whole publication.  *See Sullivan*, 376 U.S. at 279-80;

*Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986); *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1021-23 (2005).  Plaintiffs' burden to plead, and prove falsity cannot be satisfied, as a matter of law, if the challenged statements are substantially true, that is, if "the substance, the gist, the sting, of the libelous charge [is] justified."  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (citation omitted).  A court evaluating whether challenged statements are substantially true must examine whether a statement "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Id*. (citation omitted). Whether the plaintiff has satisfied this constitutional requirement is for the court to decide as a matter of law.  *Id*.; *Reader's Digest Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 261 (1984) (citing *Sullivan*, 376 U.S. at 271-72).  Because the subject matter of Hearst's Reporting – allegations made against a Congressional candidate, which the candidate publicly denied and which caused a variety of public responses from political supports and others – is a matter of fundamental public concern to voters, Plaintiffs bear the burden of proving that each alleged defamatory statement is false.  *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1382 (1999).  As discussed below, they cannot meet this standard as a matter of law.

As the Court has already found (Order 12), Plaintiffs fail to plead that any specific statement published by Hearst was false.  Plaintiffs plead generally that they were defamed merely by the publication of "an article containing" Croydon's allegations that Buttar sexually harassed her.  FAC ¶¶ 3, 96.  In an action for libel, such generalized pleading is insufficient, as a matter of law, to identify the complained of allegedly defamatory statements.  *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (a plaintiff must plead "the precise statements alleged to be false and defamatory, who made them and when"); *see also Glassdoor, Inc. v. Super. Ct.*, 9 Cal. App. 5th 623, 636 (2017) (the court "must determine whether a prima facie showing of actionable statements has been made," noting that it "is impossible to perform such a task without knowing the exact statements on which liability is predicated"); *Sullivan*, 376 U.S. at 285 (courts must review the actual statements alleged to be defamatory to determine whether they are "of a character which the principles of the First Amendment . . . protect" (citations

omitted)).  Even had they pled such factual errors, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"  *Vogel*, 127 Cal. App. 4th at 1021 (quoting *Masson*, 501 U.S. at 516-17); *Colt v. Freedom Commc'ns, Inc.*, 109 Cal. App. 4th 1551, 1558 (2003) (to be actionable, alleged factual inaccuracies must be of "such a substantial character" as to have a "different effect on the reader" (citation omitted)).

Furthermore, even if Plaintiffs' generalized pleading were sufficient to identify a specific allegedly offending statement, which, even as amended, it is not, Plaintiffs' claims must nevertheless fail because they do not sufficiently plead that the gist or sting of the challenged Articles "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 517 (citation omitted); *Partington v. Bugliosi*, 56 F.3d 1147, 1161 (9th Cir. 1995) ("in determining the 'gist' or 'sting' of a newspaper article [to assess whether it is actionable, a court] must look at the highlight of the article, the pertinent angle of it" (alteration in original) (citation and emphasis omitted)).  To determine the effect of an allegedly libelous statement on a reader, a court must look at the allegedly defamatory statement in the context of the whole publication of which it is a part.  *Issa v. Applegate*, 31 Cal. App. 5th 689, 713-14 (2019) (quoting *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998) ("[A] defamatory meaning must be found, if at all, in a reading of the publication as a whole.  Defamation actions cannot be based on snippets taken out of context.")); *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1131 (1985) (a court may not evaluate a claim of defamation separating the article into segments, but rather the article "must be read as a whole in order to understand its import and the effect that it was calculated to have on the reader").

In dismissing the original Complaint, the Court described Plaintiffs' allegations of falsity as based on a purported failure to interview and quote Plaintiffs' preferred sources, and to report on allegations by those sources that Croydon had made false claims against other individuals in the past.  Order 12.  The Court further found that Plaintiffs had failed to allege that "any of their preferred sources could have offered anything but their own speculation about any of Croydon's allegations against Plaintiff Buttar," and that the Complaint failed to allege that those sources

"had *any* firsthand knowledge as to the veracity of Croydon's allegations," or that the inclusion of these individuals' views would have rendered anything in either of Hearst's Articles false. *Id.* Accordingly, Plaintiffs had failed to demonstrate that inclusion of those preferred sources' opinions would have created a "different effect on the reader," because both of Hearst's Articles included Buttar's denial of the allegations. *Id.* Nothing pled in the FAC changes that analysis as it applies to Hearst's Reporting.

As to Hearst's Follow-Up Article, the Court found that Plaintiffs' allegation that Hearst misleadingly represented those vouching for Buttar's integrity as "Buttar's friends, when they are fiercely independent political activists," was "belied by the text of the Follow Up Article." *Id.* at 13. Plaintiffs repeat that identical allegation in the FAC pleading no additional facts, though now asserting that this purported portrayal of Buttar's supporters was "reckless and malicious." FAC ¶ 45. For the same reasons already identified by the Court (Order 13), Plaintiffs again fail to plead a basis for claiming these individuals were falsely portrayed.

Plaintiffs also allege that Hearst's Follow-Up Article was "reckless and malicious" for "fail[ing] to disclose that Ms. Croydon was not only a source known to be unreliable, but had a long history of hurling false accusations – including a false allegation of sexual assault – against political activists," asserting that the signatories of the Open Letter and others "had laid bare obvious reasons to doubt Ms. Croydon's veracity." FAC ¶¶ 46-47. But the Court has already expressed skepticism toward Plaintiffs' assertion that "alleged omissions of allegations against Croydon in unrelated incidents [could] demonstrate that the Follow Up Article reported anything that was provable as false." Order 13. Indeed, the only fact the Court identified as arguably sufficiently pled to show falsity was that Hearst's Follow-Up Article did not state that the Open Letter included unsupported allegations that the Croydon had a "history of fabricating attacks against innocent people," and the equally unsupported assertion that she is "an individual with a widely known pattern of making false accusations." *Id.* But, as the Court further noted, it is unclear that the omission of such unsupported statements was enough to show falsity in the context of the entire article, which quoted Buttar's denial of the allegations, and included

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1   quotations from several individuals who vouched for Buttar's character and had signed the Open

2   Letter.  *Id.*, citing *Masson*, 501 U.S. at 517.  Plaintiffs' repetition of substantially the same claims

3   now (*compare* ECF No. 1, ¶ 43 *with* FAC ¶¶ 46-47) changes nothing.

4        Plaintiffs continue to ignore the full context of Hearst's Follow-Up Article, which when

5   read in its entirety, the plain text of which truthfully, fairly and impartially reported on the

6   relevant events: (a) the fact that allegations regarding Buttar were made in Croydon's Essay

7   (FAC ¶ 17); (b) that Buttar had issued a denial of those allegations in which he explicitly stated

8   that "[e]very survivor must be heard and *I hope to be allowed the same opportunity to be heard*

9   *as well*" (FAC ¶ 19; Ibarguen Decl. Ex. B (emphasis added)); (c) that some political

10  organizations and others who had previously endorsed Buttar's candidacy announced they were

11  investigating Croydon's claims or had withdrawn their support (Ibarguen Decl. Ex. B); (d) that

12  several longtime activists had published the Open Letter in which they said the allegations

13  "attempted to draw a different picture of [Buttar], than the one we know to be true," (*id.*); and (e)

14  stating that "[t]he accusations against Buttar don't ring true to some in the Washington activist

15  community who say they know both him and Croydon", and quoting some of those individuals.

16  *Id.*  Read in its entirety, as a court's evaluation of a defamation claim must be, the Follow-Up

17  Article is substantially true.  *See, e.g.*, *Ward v. News Grp. Int'l, Ltd.*, 733 F. Supp. 83, 84-85

18  (C.D. Cal. 1990) (dismissing defamation claim based on republication of an alleged libel where,

19  considering article as a whole, news report accurately and neutrally reported on the allegedly

20  libelous statements made about a public figure and where publication included plaintiff's denial

21  of the allegations).

22        In effect, Plaintiffs suggest *their* editorial decisions about *how* to cover this issue should

23  be substituted for the editorial decisions made by Hearst.  Such an intrusion into the editorial

24  process and choices about what a newsgatherer publishes are plainly unconstitutional, and have

25  been roundly rejected by the courts.  *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241,

26  258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to

27

28

13

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST
AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment.").

Even so, Plaintiffs plead only conclusory allegations that the omission of the subjective opinions of these individuals – none of whom are alleged by Plaintiffs to have had specific knowledge about the Croydon's actual allegations – defamed them.  And nowhere in the FAC do Plaintiffs plead that any of their preferred sources – even those who signed the Open Letter – could have offered anything but their own speculation about the truth of Croydon's claims.  For example, the *Bay Area Reporter* article quotes one individual as stating the opinion that there was "'absolutely no merit' to Croydon's claims," but it reflects that this opinion was based on the speaker's views about unrelated conduct by Croydon, and makes no assertion that the speaker had direct knowledge relevant to establishing the truth or falsity of Croydon's claims about Buttar.  FAC ¶¶ 28-29.  The same is true of the article published by *The Intercept* which the FAC quotes as reporting that "several people [] recounted having disturbing interactions with Croydon that caused them to question her credibility" but failing to sufficiently plead that the article contained those statements prior to publication of Hearst's Follow-Up Article (*see* FN7 *infra*) and, nevertheless failing to suggest that such people had *any* specific knowledge of the truth or falsity of Croydon's claims against Buttar.  FAC ¶¶ 40, 42-43.  Even the Open Letter itself lacks *any* assertion of knowledge about the truth or falsity of Croydon's claims about *Buttar*; Plaintiffs – though they rely on the Open Letter to assert that Croydon was "a source known to be unreliable" based on an unsupported alleged "history of hurling such false accusations" – do not, and cannot, plead differently.  FAC ¶¶ 46-47.  As such, Plaintiffs fail to demonstrate through their pleading that the inclusion of the speculative beliefs of these individuals about Croydon's credibility would have created a "different effect on the reader" (*Colt*, 109 Cal. App. 4th at 1558 (citation omitted)) than those quoted in Hearst's Follow-Up Article who expressed that the "accusations against Buttar don't ring true."  Ibarguen Decl. Ex. B; *Masson*, 501 U.S. at 517 ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." (quotation marks and citation

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST
AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1    omitted)).  Regardless, a defamation claim cannot be proven by "scrutinizing what is not said to

2    find 'a defamatory meaning which the article does not convey to a lay reader.'"[3]  *Forsher v.*

3    *Bugliosi*, 26 Cal. 3d 792, 803 (1980) (quoting *Mullins v. Thieriot*, 19 Cal. App. 3d 302, 304

4    (1971)).

5        For all these reasons, Hearst's Reporting on this public controversy is substantially true,

6    and Plaintiffs fail to meet their burden of pleading falsity.

7    **2.  <u>Plaintiffs Did Not Adequately Demand a Correction or Plead Compensable</u>**
     **<u>Damages as Required by California Law.</u>**

8

9        California's correction statute establishes several requirements for a plaintiff seeking to

10   recover general, special or exemplary damages in connection with an alleged libel published by a

11   news publication such as Hearst's *San Francisco Chronicle*.  Plaintiffs fail to satisfy any of those

12   requirements and they are barred from recovering any money damages.

13       As a threshold matter of law, under California Civil Code § 48a(b), a libel plaintiff

14   seeking to recover general or exemplary damages is required to serve written notice to the

15   publisher of an alleged libel within 20 days of knowledge of the publication, specifying the

16   allegedly libelous statements and demanding correction.  Failure to serve such a specific and

17   timely demand of correction limits a plaintiff's recovery, as a matter of law, to recovery of

18

19   [3] Plaintiffs' assertion that the Follow-up Article "implied" some greater credibility in Croydon's
     allegations as compared with Open Letter's authors (FAC ¶¶ 50-51) because it failed to include a

20   hyperlink to the Open Letter – despite acknowledging that Hearst had reported on the Open
     Letter (*id.* ¶ 49) – is misguided and, in any event, insufficient to support their defamation claim.
     The Court has already found that Hearst's Reporting does not assert or imply that Croydon's

21   allegations were anything more than her unproven claims (Order 12), which were disputed by
     Buttar.  Even if Hearst's Articles could be read as presenting Croydon's allegations as true

22   (which they cannot), such a conclusion would be nonactionable opinion because all of the facts
     supporting such a conclusion are disclosed in Hearst's Articles.  *Thomas v. L.A. Times*

23   *Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1015 (C.D. Cal. 2002) (granting anti-SLAPP motion
     where article "merely states 'opinion[s] on matters of public concern that do not constitute or

24   imply a provable factual assertion'" (alteration in original) (quoting *Underwager v. Channel 9*
     *Austl.*, 69 F.3d 361, 366 (9th Cir. 1995), *aff'd*, 45 F. App'x 801 (9th Cir. 2002)); *Partington*, 56

25   F.3d at 1156-57 ("[W]hen an author outlines the facts available to him, thus making it clear that
     the challenged statements represent his own interpretation of those facts and leaving the reader

26   free to draw his own conclusions, those statements are generally protected by the First
     Amendment."); *see also Thomas*, 189 F. Supp. 2d. at 1015 ("[B]ecause the reader is free to draw

27   his or her own conclusions based upon those facts, this type of statement is not actionable in
     defamation" (quoting *Partington*, 56 F.3d at 1156)).

28
     DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST
     AMENDED COMPLAINT
     CASE NO. 3:21-CV-05566-EMC

special damages.  Special damages are defined in the statute as "damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other."  Cal. Civ. Code § 48a(d)(2); *Freedom Newspapers, Inc. v. Super. Ct.*, 4 Cal. 4th 652, 654-56 (1992); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013) (noting that special damages are actual out-of-pocket losses and must be pled with specificity).  Where a plaintiff fails to serve a correction demand and also fails to adequately plead special damages, the claims fail on their face and must be stricken under the anti-SLAPP statute.  *Anschutz Ent. Grp. v. Snepp*, 171 Cal. App. 4th 598, 643 (2009) (dismissing defamation claims under anti-SLAPP where no legally enforceable correction demand was served by the plaintiff and where special damages were pled only through generalized allegations with "no proof of special damages").

        Here, as the Court has already found (Order 18), Plaintiffs failed to plead compliance with § 48a.  The FAC fails to identify *any* direct communication between Buttar and Hearst in connection with its reporting on this issue that constitutes a "written notice specifying the statements claimed to be libelous and demanding that those statements be corrected."  Cal. Civ. Code § 48a(a).  The only communication Plaintiffs allege was sent to Hearst after publication of its July 21 Article that they allege might have satisfied this requirement is the Request for Follow-Up Coverage, which, while sent initially to a reporter (not the publisher, as required by § 48a), was included in an email exchange that subsequently included the then-Editorial Page editor of the *Chronicle*.  FAC ¶¶ 33-35.  The underlying communication "requested that the *Chronicle* correct the Original Piece by, *inter alia*, interviewing individuals 'closer to this situation' (such as Dr. Flowers or Ms. Zundmanis)."  *Id.* ¶ 31.  Even accepting as true Plaintiffs' amended assertion that the Editorial Page editor was authorized to accept correction requests, Plaintiffs' selective quoting of the Request for Follow-Up Coverage tellingly reveals that the communication failed to demand any correction of Hearst's First Article consistent with the strict requirements of Cal. Civ. Code § 48a, and, at most, that it sought follow-up coverage of this

16

matter of public interest in the form of interviews with third parties representing "'a number of voices' [that] had been 'left out' from the *Chronicle*'s story." [4]  *Id.*  Indeed, the Court has already found the same.  Order 18.  Furthermore, Plaintiffs fail to plead that they sent the *Chronicle* any subsequent communication that could constitute a correction demand consistent with Cal. Civ. Code § 48a following publication of Hearst's Follow-Up Article.  Because the FAC fails to plead compliance with the correction statute as to the Follow-Up Article – the only article on which the Court has granted leave to replead – Plaintiffs are also barred, as a matter of law, from recovering general or exemplary damages in connection with Hearst's Follow-Up Article. [5]

Plaintiffs are further foreclosed from *any* recovery in this action because they fail to plead any concrete and quantifiable injury, much less damages sufficient to satisfy the minimum requirements for pleading special damages.  Cal. Civ. Code § 48a(d)(2) (special damages are "damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other.")  Plaintiffs make only generalized allegations of injury purportedly suffered by Buttar individually, and make *no* allegations of injury specific to the Campaign.  FAC ¶¶ 59, 61-62 (alleging Hearst's reporting caused injury to "*Buttar's* ethics and integrity, harmed *his* professional livelihood and personal relationships, slashed *his* speaking and writing opportunities, and gravely damaged the public's perception of *his* fitness to hold political office"; "effectively deprived [*Buttar*] of the ability to speak publicly about two critical issues amidst a

---

[4] The FAC also falls short of pleading that the Request for Follow-Up Coverage satisfies the correction demand requirements of Civil Code § 48a for several other reasons.  Plaintiffs fail to plead: (a) that the communication identified the specific allegedly defamatory statements at issue and demanded their correction, or (b) that the communication identified a party in interest on behalf of whom the purported correction demand was being made.  These failures provide independent bases to find that the Request for Follow Up Coverage, as a matter of law, fails to satisfy the requirements of the correction statute.  *See Freedom Newspapers*, 4 Cal. 4th at 654-56 (section 48a(a) requires that a plaintiff "demand[] that [specific libelous statements] be corrected"); *Anschutz*, 171 Cal. App. 4th at 642 (section 48a requires that the plaintiff serve a retraction demand or, at minimum, be named in the demand).
[5] Even if Plaintiffs had served a valid demand for correction, in order to recover exemplary damages, they would be required, as a matter of law, to prove that Hearst acted with actual malice.  Cal. Civ. Code § 48a(3).  As explained below, they cannot meet this burden.

17

global pandemic and ominous wildfires: healthcare policy and climate justice" and "undermined *Mr. Buttar*, the integrity of our elections, and our very democracy") (emphases added)).  But, as the Court has already found (Order 19-20), such general and speculative allegations are insufficient to plead special damages.  *Gang v. Hughes*, 111 F. Supp. 27, 29 (S.D. Cal. 1953) ("[G]eneral allegation of loss of business" is insufficient to show special damages, for which "plaintiff must allege the specific manner in which he lost business as a result of the defamation"); *Pridonoff v. Balokovich*, 36 Cal. 2d 788, 792 (1951) ("general allegation of the loss of a prospective employment, sale, or profit will not suffice").  Plaintiffs' amended pleaded damages are wholly speculative calculations of lost potential campaign donations and volunteer time that the Buttar Campaign might have received (FAC ¶¶ 64-83), and Buttar's purportedly unsuccessful efforts to find employment matching the duties and income he had "before running for office," and vague assertions of his lack of opportunities to "speak publicly" and "secure a book contract."  FAC ¶¶ 85-86, 89-92.  These are insufficient to meet Plaintiffs' burden.

Even if Plaintiffs had pled special damages with sufficient specificity, they fail to sufficiently plead that *any* alleged damages are attributable specifically to Hearst's Reporting on this public controversy.  To the contrary, the facts they do plead reveal the impossibility of demonstrating that any specific damages could have resulted directly from Hearst's reporting. For example, the FAC alleges: (1) Hearst's Reporting was based on and followed publication of Croydon's Essay detailing her allegations (FAC ¶ 17); "Ms. Croydon's false accusations were immediately and consistently seized upon by critics across the political spectrum" (FAC ¶ 57); and because several other publications – the *Bay Area Reporter*, *The Intercept*, *Bay Guardian*, *48 Hills* and *Mission Local* – all reported on the allegations made against Buttar (FAC ¶¶ 28-29, 40, 42, 58).  Plaintiffs cannot, as a matter of law, prove that any injury, much less any specific damages, were suffered directly because of Hearst's Reporting on the same information about a matter of public interest.  Cal. Civ. Code § 48a(d)(3); *Anschutz*, 171 Cal. App. 4th at 643 (dismissing defamation action pursuant to anti-SLAPP where plaintiff fails to plead special damages with specificity and presents no evidence of such losses).

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

### 3. __Plaintiffs Cannot Show that Any Statement Was Published with Actual Malice.__

Plaintiffs also fail to state a claim for defamation for the independent reason that the FAC fails to plead facts that would make their otherwise conclusory allegation of "actual malice" plausible, as they are required to do as a matter of law – much less facts that would satisfy the "clear and convincing" standard applicable to any libel action brought by a public figure. *Sipple*, 71 Cal. App. 4th at 247; *Reader's Digest*, 37 Cal. 3d at 256 ("If the person defamed is a public figure, he cannot recover unless he proves, by clear and convincing evidence, that the libelous statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (quoting *Sullivan*, 376 U.S. at 279-80)); *Conroy v. Spitzer*, 70 Cal. App. 4th 1446, 1454 (1999) (same); *Kieu Hoang v. Phong Minh Tran*, 60 Cal. App. 5th 513, 537 (2021) (finding insufficient evidence of actual malice where reporter had no reason to believe source was untrustworthy and where evidence presented by alleged victim of defamation did not show "obvious reasons to doubt the veracity of [the source] or the accuracy of [the] reports." (quoting *Reader's Digest*, 37 Cal. 3d at 257)); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 117 (2007) (university football coach, a public figure defamation plaintiff, could not show a likelihood of success on libel claim where he failed to show actual malice by clear and convincing evidence).

As public figures, Plaintiffs bear the heavy burden of satisfying the actual malice standard applicable to this action; their FAC demonstrates unequivocally that they cannot meet this burden even at the threshold pleading stage. The only facts Plaintiffs plead to support their actual malice burden boil down to (a) failure by Hearst to contact some individuals identified by Plaintiffs who, according to Plaintiffs, believed Croydon – based on unrelated conduct – to be untrustworthy, and (b) Hearst's failure to include those individuals' purely speculative views about the credibility of Croydon's allegations against Buttar.[6] FAC ¶¶ 98-99. As the Court has already ruled, this is insufficient, as a matter of law, to satisfy Plaintiffs' burden. Order 14.

---

[6] Plaintiffs also baselessly insinuate that Hearst's Reporting was somehow motivated by Buttar's religion, race or national origin. FAC ¶¶ 52-55, 63. These conclusory assertions are vague, unspecific, and wholly unsupported and inconsistent with the content of the complained-of

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

*First*, Plaintiffs cannot plead actual malice by relying on a purported failure to contact certain individuals who, based on the facts pled in the FAC, lacked *any* specific or actual knowledge that Croydon's allegations against Buttar were false.  Though the FAC alleges that these individuals *subjectively* believed – based on their own interactions with her or with Buttar – that Croydon's allegations were not credible, the FAC fails to allege any facts indicating that these individuals (or anyone else not contacted by Hearst) could offer actual knowledge that the specific allegations against Buttar were false.  *See, e.g.*, FAC ¶ 22 (alleging Plaintiffs informed Hearst of a person willing to speak to Hearst "who can speak about [Mr. Buttar's] character and other claims [Croydon] has made in the past that are *false* – including one who alleges that [Croydon] also made *false claims about her husband*") and ¶ 31 (requesting that Hearst interview "individuals 'closer to this situation' (such as Dr. Flowers or Ms. Zundmanis)" but failing to plead that these or other individuals had *actual* knowledge that Croydon's allegations were false); ¶¶ 36-38 (alleging an email sent by Chris Sampson to Hearst "stated that Ms. Croydon was a 'pathological liar' who had 'harassed' one of his friends 'repeatedly in private texts to the point of [his] friend considering suicide'" but failing to plead that Sampson knew any facts relating to the veracity of Croydon's claims against Buttar or that he even knew Buttar).  Nor does the FAC allege Hearst knew that these individuals had actual knowledge about Croydon's claims about Buttar.  At most, these individuals could only have provided a subjective opinion that the allegations were not credible.[7]  Simply put, Plaintiffs offer no evidence that any of the

---

Articles, and, in any event, insufficient to satisfy Plaintiffs' burden of proving actual malice, and the Court has already found the same.  Order 17.

[7] The FAC's description of these individuals' statements in other publications also fails to establish that any of them had specific knowledge as to the truth or falsity of Croydon's allegations about Buttar.  *See* FAC ¶ 41 (failing to allege the authors of the Open Letter had knowledge of the truth of Croydon's allegations against Buttar); ¶ 40 (quoting from an article published by *The Intercept* which referred to "several people who recounted having disturbing interactions with Croydon that caused them to question her credibility" but failing to plead these people had any specific knowledge of the falsity of Croydon's claims against Buttar); ¶¶ 28-29 (quoting from a *Bay Area Reporter* article, which quoted Martine Zundmanis as saying there was "'absolutely no merit' to Croydon's claims," but explaining that this was an opinion based on unrelated interactions with Croydon and Buttar, not on actual knowledge of the truth of the claims).  To the extent Plaintiffs assert that the updated version of *The Intercept*'s article originally published on July 23, 2020 contained statements regarding Croydon's credibility (FAC ¶¶ 40, 47), Plaintiffs have insufficiently pled that those statements were published by *The*

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

1    individuals they rely on to claim that Croydon was "known to be unreliable" (FAC ¶ 46) "could
2    offer actual knowledge that the specific allegations against Buttar were false."  Order 14.

3            *Second*, as the Court has already found (Order 15), the alleged failure to investigate by
4    contacting preferred sources proposed by Plaintiffs is insufficient to demonstrate that Hearst's
5    Reporting was published with knowledge of their falsity or reckless disregard for their truth.
6    *Reader's Digest*, 37 Cal. 3d at 247 ("The failure to conduct a thorough and objective
7    investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable
8    issue of fact on that controversy"); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491
9    U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably
10   prudent person would have done so, is not sufficient to establish reckless disregard").

11           For these reasons, Plaintiffs fail to adequately plead Hearst acted with "actual malice" in
12   its reporting on this public controversy, and fall well short of the applicable "clear and
13   convincing" standard.  *McGarry*, 154 Cal. App. 4th at 114 (actual malice standard requires
14   showing by plaintiff of "evidence of actual knowledge of the falsity or reckless disregard for its
15   falsity must be of such a character as to command the unhesitating assent of every reasonable
16   mind") (citation and quotation marks omitted); *Harte-Hanks Commc'ns*, 491 U.S. at 688; *St.*
17   *Amant v. Thompson*, 390 U.S. 727, 731 (1968) ("[R]eckless conduct is not measured by whether
18   a reasonably prudent man would have published, or would have investigated before publishing.
19   There must be sufficient evidence to permit the conclusion that the defendant in fact entertained
20   serious doubts as to the truth of his publication.").

21       **4.   Plaintiffs' Derivative Claim Under Cal. Bus. & Prof. Code §§ 17200, *et seq*. Fails.**

22           Plaintiffs' Unfair Competition Law ("UCL") claim, as pleaded, is entirely derivative of
23   and relies entirely on their failed defamation claim.  FAC ¶¶ 106-107.  Because the UCL claim
24   relies entirely on and is derivative of the defamation claim, the UCL claim must be dismissed for
25   the same reasons as Plaintiffs' failed defamation claim.  Order 20 n.3.

26

27   *Intercept* prior to its "follow-up investigation" on September 25, 2020, which Plaintiffs pled
     "prompted [*The Intercept*] to update its original, July 23, 2020 article."  FAC ¶¶ 42-43.
28
                                                      21
     DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST
     AMENDED COMPLAINT
     CASE NO. 3:21-CV-05566-EMC

## VI.   **PLAINTIFF BUTTAR CAMPAIGN FAILS TO STATE A CLAIM**

Further illustrating the frivolous nature of this lawsuit, Plaintiff Buttar Campaign fails to plead that *it* was the subject of any alleged defamatory statement, and pleads damages based on speculative and unsupported assertions about potential lost campaign donations and volunteer time, while failing to plead that *it* suffered any injury independent of the purported injury to Buttar, given that the Buttar Campaign exists solely as a vehicle through which Buttar ran for elected office in 2020 and 2022.  FAC ¶ 14.  Thus, the Buttar Campaign fails to state a claim upon which relief could be granted, and its claims should be dismissed.

*First*, it is black-letter federal and state law that a statement cannot defame a plaintiff if it does not identify the plaintiff.  *Sullivan*, 376 U.S. at 288 (federal constitutional law requirement); *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (1986) ("To allow a plaintiff who is not identified, either expressly or by clear implication, to institute such an action poses an unjustifiable threat to society" and noting that, without such a requirement, the damage to the news media would be significant and would chill its coverage of topics of general concern).  Here, the FAC is devoid of any factual pleading – whether originating with Croydon's allegations or contained in Hearst's reporting on them – that is "of and concerning" the Buttar Campaign.  In the absence of such a statement, the Buttar Campaign fails to plead any basis for its defamation claim, and the claim must fail as a matter of law.

*Second*, even if the Buttar Campaign had sufficiently pled an allegedly defamatory statement concerning it, the FAC fails to identify any concrete injury suffered specifically by the Buttar Campaign.  Instead, the Buttar Campaign asserts damages based on unsupported statements about past campaign contribution rates and the value of volunteer time before Croydon published her allegations, and completely speculative assertions about the potential value of campaign contributions and volunteer time Buttar might have received after Croydon's allegations.  FAC ¶¶ 64-83.  Such conjecture and speculation are insufficient to meet the Buttar Campaign's burden of pleading that it meets the threshold requirement for establishing standing to sue; thus, the Buttar Campaign's claims should be dismissed for lack of standing.  *Spokeo, Inc.*

*v. Robins*, 578 U.S. 330, 339-40 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Plaintiffs fail to plead even that the Buttar Campaign has any *independent* reputation – separate from that of Buttar himself – capable of being defamed (much less that the campaign vehicle's own reputation was in any way defamed by Hearst's Reporting).  FAC ¶ 14 (describing the Buttar Campaign as "an unincorporated organization [which] constituted Mr. Buttar's Congressional campaign[s]" in 2020 and 2022); FAC ¶¶ 59-62, detailing purported injuries to Buttar individually, not to the Buttar Campaign.  Having failed to plead some injury, the Buttar Campaign's claim must be dismissed as a matter of law.  *See Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993 (D. Nev. 2020) (dismissing action brought by campaign committee for lack of standing where campaign failed to show it suffered concrete injury).

## VII.   CONCLUSION

Hearst respectfully requests that this Court dismiss Plaintiffs' First Amended Complaint in its entirety with prejudice[8] under Fed. R. Civ. P. 12(b)(6) and California's anti-SLAPP law, and award Hearst its mandatory fees and costs incurred in connection with this motion, in an amount to be determined by future motion.

DATED: September 23, 2022

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE

THE HEARST CORPORATION
JONATHAN R. DONNELLAN (*pro hac vice*)
DIEGO IBARGUEN (*pro hac vice*)

By:           /s/ Diego Ibarguen

*Attorneys for Defendant Hearst Communications, Inc.*

---

[8] The Court has already afforded Plaintiffs an opportunity to amend their Complaint; for the reasons discussed above any further amendment would be futile.

DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC