THOMAS R. Burke (CA State Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

JONATHAN R. DONNELLAN
jdonnellan@hearst.com (*pro hac vice*)
DIEGO IBARGUEN
dibarguen@hearst.com (*pro hac vice*)
HEARST CORPORATION
300 W. 57th Street, 40th Floor
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000

Attorneys for Defendant
HEARST COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHID BUTTAR FOR CONGRESS COMMITTEE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> HEARST COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 3:21-cv-05566-EMC <br><br> **DEFENDANT HEARST COMMUNICATIONS, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Date: December 15, 2022 <br> Time: 1:30 p.m. <br> Place: Courtroom 5, 17th Floor |

Defendant Hearst Communications, Inc., ("Hearst") respectfully submits this reply brief in further support of its motion to dismiss and special motion to strike the First Amended Complaint filed in this action ("FAC") by Plaintiffs Shahid Buttar ("Buttar") and Shahid Buttar for Congress Committee ("Buttar Campaign"), and in reply to Plaintiffs' Opposition to Hearst's Motion ("Opposition" or "Opp.").

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..................................................................................................................1

    I.     PLAINTIFFS CANNOT SATISFY THE PLEADING STANDARD ....................3

    II.    PLAINTIFFS HAVE NOT COMPLIED WITH THE CORRECTION STATUTE ...................................................................................................................8

    III.   PLAINTIFFS FAIL TO PLEAD DAMAGES WITH SUFFICIENT SPECIFICITY ...................................................................................................10

    IV.   PLAINTIFFS CANNOT CURE THE COMPLAINT'S DEFICIENCIES THROUGH AMENDMENT .................................................................................12

CONCLUSION ....................................................................................................................12

i

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ampex Corp. v. Cargle*,
   128 Cal. App. 4th 1569 (2005) ...................................................................................................4

*Annette F. v. Sharon S.*,
   119 Cal. App. 4th 1146 (2004) ...................................................................................................4

*Anschutz Ent. Grp., Inc. v. Snepp*,
   171 Cal. App. 4th 598 (2009) .............................................................................................10, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................................3

*Beilenson v. Superior Ct.*,
   44 Cal. App. 4th 944 (1996) .......................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................................3

*Conroy v. Spitzer*,
   70 Cal. App. 4th 1446 (1999) .....................................................................................................7

*Curtis v. Butts*,
   388 U.S. 130 (1967)....................................................................................................................7

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (2018) .......................................................................................................5

*Evans v. Unkow*,
   38 Cal. App. 4th 1490 (1995) .....................................................................................................7

*Freedom Newspapers, Inc. v. Super. Ct.*,
   4 Cal. 4th 652 (1992) ............................................................................................................9, 10

*Gang v. Hughes*,
   111 F. Supp. 27 (S.D. Cal. 1953)..............................................................................................11

*Hoffman v. Cap. Cities/ABC, Inc.*,
   255 F.3d 1180 (9th Cir. 2001) ....................................................................................................5

*Kanfer v. Pharmacare US, Inc.*,
   142 F. Supp. 3d 1091 (S.D. Cal. 2015).......................................................................................2

*Kapellas v. Kofman*,
  1 Cal. 3d 20 (1969) ..................................................................................................................9

*Khawar v. Globe Int'l, Inc.*,
  19 Cal. 4th 254 (1998) ............................................................................................................7

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ................................................................................................2

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ................................................................................................................3

*Nicosia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) ....................................................................................3

*Padres L.P. v. Henderson*,
  114 Cal. App. 4th 495 (2003) .................................................................................................5

*Pep v. Newsweek*,
  553 F. Supp. 1000 (S.D.N.Y. 1983) ........................................................................................7

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
  946 F. Supp. 2d 957 (N.D. Cal. 2013) ..................................................................................10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ..................................................................................................3

*Pridonoff v. Balokovich*,
  36 Cal. 2d 788 (1951) ...........................................................................................................11

*Reed v. Gallagher*,
  248 Cal. App. 4th 841 (2016) .................................................................................................4

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) ..............................................................................4, 6

*Robertson v. Rodriguez*,
  36 Cal. App. 4th 347 (1995) ................................................................................................4, 5

*Soukup v. Law Offices of Herbert Hafif*,
  39 Cal. 4th 260 (2006) ............................................................................................................5

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) .............................................................................................................6, 7

*Stevens v. Sun Publ'g Co.*,
  240 S.E.2d 812 (S.C. 1978) ....................................................................................................7

*Tull v. Higgins*,
    No. 21-cv-01566, 2021 WL 6116971 (N.D. Cal. Dec. 27, 2021) .......................................... 4, 6

*Ulkarim v. Westfield LLC*,
    227 Cal. App. 4th 1266 (2014) ..................................................................................................... 5

*United States v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) ........................................................................................................ 2

*Widener v. Pac. Gas & Elec. Co.*,
    75 Cal. App. 3d 415 (1977) .......................................................................................................... 7

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ................................................................................ 3, 5, 6

*Young v. CBS Broad., Inc.*,
    212 Cal. App. 4th 551 (2012) .................................................................................................. 3, 7

**Statutes**

Cal. Civ. Code § 48a ................................................................................................................ *passim*

Cal. Civ. Proc. Code § 425.16(b) ................................................................................................... 3

# INTRODUCTION

Plaintiffs' Opposition to Hearst's motion to dismiss and special motion to strike demonstrates the futility of their claims, repeating the same arguments this Court has already rejected, and, as before, failing to substantively address the fatal pleading deficiencies of their First Amended Complaint ("FAC", ECF No. 46). Plaintiffs repeat the same conclusory allegations they have made throughout this litigation, coupled with incorrect assertions about the legal standards applicable to their defamation claim.[1]  For the same reasons this Court painstakingly explained with respect to the initial complaint, the FAC fails as a matter of law for many independent reasons and should be dismissed with prejudice.

*First*, as a matter of law, Plaintiffs cannot satisfy the pleading standard applicable to their defamation claim, and their continuing mischaracterization of that burden as "minimal" does not solve their failure to properly plead facts under *any* standard. Plaintiffs fail to plead any new facts relevant to their claims, and the facts they reiterate in their FAC have already been rejected by the Court as insufficient to meet their minimum pleading burden. ECF No. 39 ("Order"), 14-17. *Second*, even if Plaintiffs could satisfy the applicable pleading standard, which, on their pleaded facts the Court has previously found they cannot, they are barred as a matter of law from recovery of general or exemplary damages because they fail to sufficiently plead compliance with California's correction statute. Plaintiffs again rely on an email sent after the first of two challenged articles to assert they made a valid correction demand, but the Court has already rejected Plaintiffs' characterization of the email finding it "failed to demand *any* correction", and instead sought follow-up coverage in the form of interviews of preferred sources. Order 18-19 (emphasis added). In any event, Plaintiffs fail to plead any facts alleging that they sought correction of Hearst's follow-up article, which is the only article for which the Court granted them an opportunity to amend their claims. Order 21.[2]  *Third*, because they have failed to satisfy

---

[1] As the Court noted in dismissing the initial complaint (Order 20 n.3), Plaintiffs' unfair competition claim is wholly derivative of their defamation claim (Opp. 12 n.50). Because their defamation claim fails, so, too, does their unfair competition claim.

[2] As in their initial complaint, Plaintiffs allege in the FAC (¶¶ 30-35) and in their Opposition (5-6, 17-18) that they demanded correction in an email sent by a Buttar Campaign representative to

1

the correction statute, any potential recovery by Plaintiffs is limited to special damages; but, as a matter of law, though they litter their FAC and Opposition with conclusory allegations of purported damage, they nevertheless again fail to plead special damages with sufficient specificity, and, in any event, again fail to plausibly plead that *any* damage they may have suffered resulted solely and directly from Hearst's reporting on this matter of public interest.

*Fourth*, though Plaintiffs again ask the Court to grant leave to amend, their failure to include any new relevant factual content in their FAC demonstrates that Plaintiffs cannot cure the factual deficiencies in their Complaint through amendment. As explained below and in Hearst's Opening Brief, they cannot point to any facts that would satisfy the pleading standards applicable to their claims, nor can they demonstrate that they submitted a correction demand consistent with the correction statute, or that they can plead damages resulting from Hearst's publication with sufficient specificity. Such fatal deficiencies in their claims cannot be cured through amendment, and Plaintiffs' request for further leave to amend should be denied as futile.

For all of these reasons and for those explained in Hearst's Opening Brief, and because

---

*San Francisco Chronicle* reporter Joe Garofoli at 5:44 a.m. on July 22, 2020, and that the same email was part of a longer email thread that later included editorial page editor John Diaz. Even if Plaintiffs were correct that Diaz was authorized to receive correction requests, the Court has already rejected their assertion that the email constituted a correction demand because the "communication failed to demand *any* correction of Hearst's First Article consistent with the requirements of Cal. Civ. Code § 48a." Order 19 (emphasis added). As before, Plaintiffs do not attach the relevant communications to their FAC or their Opposition, despite incorporating them in their filings by repeated reference; because they repeatedly refer to and rely on these communications, these emails may be reviewed by the Court in considering Hearst's dispositive motion. *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (courts may take judicial notice of all "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (Rule 12 motion properly granted by considering web pages referred to in complaint and attached to defendants' motion); *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1099 (S.D. Cal. 2015) ("[I]f [a] plaintiff refers extensively to [a] document or the document forms the basis of the plaintiff's claim," a court may consider the document at the motion-to-dismiss stage, deeming it incorporated into the complaint (citation omitted)). Accordingly, a copy of an email thread containing Brooks' 5:44 a.m. email to Joe Garofoli on July 22, 2020, as well as, for completeness, the other communications between Buttar for Congress representatives and employees of the *San Francisco Chronicle*, all of which are also incorporated by reference in the FAC (*see, e.g.*, FAC ¶¶ 18-19, 22-23, 30-35, 98) and Plaintiffs' Opposition (Opp. 4-6, 14, 16, 17-18), is attached to the Reply Declaration of Diego Ibarguen in Further Support of Defendant's Motion to Dismiss and Special Motion to Strike ("Ibarguen Reply Decl.").

allowing further amendment of the FAC would not overcome Hearst's legal defenses, the claims in the FAC should be dismissed in their entirety with prejudice.

## I. PLAINTIFFS CANNOT SATISFY THE PLEADING STANDARD

As in their opposition to Hearst's motion to dismiss the initial complaint, Plaintiffs misapprehend the minimum pleading standards applicable to their FAC, all but ignoring the heightened pleading standards applicable to public figure defamation cases under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  Moreover, despite an opportunity to replead their claims, their FAC fails to plead any relevant new facts.  Instead, they rely on the same factual content that the Court has already considered and rejected as too speculative and conclusory to meet the threshold plausibility requirements in federal court.  Order 17; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 569 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs again ignore that the pleading standards applicable to a federal court's consideration of a motion to strike under California's anti-SLAPP statute (Cal. Civ. Proc. Code § 425.16(b)), are the same as those for a 12(b) motion.  Opp. 12; *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1446 (2019).  Nevertheless, Plaintiffs concede that their claims fall within the scope of the first prong of California's anti-SLAPP law (Opp. 12 n.51), and they further acknowledge that, as public figures (Opp. 13), they are required to "introduc[e] sufficient facts to establish a prima facie case of actual malice; in other words, to establish a reasonable probability that [they] can produce clear and convincing evidence showing that the [allegedly defamatory] statements were made with actual malice." Opp. 2 n.1 (quoting *Young v. CBS Broad., Inc.*, 212 Cal. App. 4th 551, 563 (2012)).

However, as the Court has already explained (Order 9-10) the "clear and convincing" standard applicable here is appropriately high and must be satisfied even at the preliminary stage when determining an anti-SLAPP motion. *See, e.g.*, *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1109 (N.D. Cal. 1999) ("conclusory statements that [a defamation defendant] should have known the truth does not satisfy the heightened pleading standard" of actual malice); *Wynn v. Chanos*,

3

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND SPECIAL
MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) (dismissing defamation complaint where plaintiff failed, as a matter of law, to sufficiently plead actual malice, noting "courts have found that general allegations that a defendant should have known or should have investigated the truth of his or her statements do not adequately plead actual malice."); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1019 (N.D. Cal. 2017) (citing *Wynn*'s description of the actual malice pleading standard as a "demanding burden," and dismissing defamation complaint, as a matter of law, where plaintiff did not "provide any specific allegations that would support a finding that [defendants] harbored serious subjective doubts as to the validity" of the challenged statements); *Tull v. Higgins*, No. 21-cv-01566, 2021 WL 6116971, at *9 (N.D. Cal. Dec. 27, 2021) (dismissing defamation claim as a matter of law for failure to adequately plead actual malice, noting that where "allegation lacks supporting details and is entirely conclusory[,] [i]t fails to satisfy the demanding burden of pleading actual malice."); *see also Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 360 (1995) (trial court properly granted defendant's motion to strike where plaintiff "failed to make a prima facie showing of facts to sustain a favorable libel judgment under the clear and convincing evidence standard."); *Reed v. Gallagher*, 248 Cal. App. 4th 841, 862 (2016) (same); *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1166 (2004) (trial court erred in denying defendant's motion to strike because plaintiff had not demonstrated by "clear and convincing evidence" that defendant acted with actual malice).

      Despite the Court's clarity in explaining the applicable standard, Plaintiffs again incorrectly describe their burden at the pleading stage as requiring that they show only a "minimum level of legal sufficiency and triability", and suggest that this requires that they need only "establish . . . 'minimal merit'" in pleading their claims that Hearst acted with actual malice. Opp. 13 (emphasis omitted). But, as the Court has already explained, the settled First Amendment law demands much more. The clear and convincing standard requires that "the evidence . . . be such 'as to command the unhesitating assent of every reasonable mind.'" *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1579 (2005) (citation omitted). This requirement presents "a heavy burden, far in excess of the preponderance sufficient for most civil

4

litigation." *See Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1186-87 (9th Cir. 2001) (citation omitted). "[W]here an element of a claim must be proven by clear and convincing evidence at trial, the sufficiency of the plaintiff's prima facie showing on an anti-SLAPP motion is determined *with the higher standard of proof in mind*." *Padres L.P. v. Henderson*, 114 Cal. App. 4th 495, 509 (2003), *as modified on denial of rehearing*, Jan. 15, 2004 (emphasis added); *see also Robertson*, 36 Cal. App. 4th at 358 ("in approaching the issue of whether [a plaintiff] demonstrated the existence of a prima facie case for libel, we bear in mind the higher clear and convincing standard of proof"). And, where, as here, the matter at issue involves a public figure, Plaintiffs must demonstrate a reasonable likelihood that they can show "by clear and convincing evidence that the defendant acted with 'actual malice.'" *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 856 (2018) (citation omitted); *Wynn*, 75 F. Supp. 3d at 1234. Plaintiffs again fail to wrestle with this heightened standard, falling back on the "minimal merit" standard which is inapplicable here. Opp. 13.[3]

Fundamentally—regardless of the legal standard—Plaintiffs fail to identify *any* factual matter—even after amendment—pled in the FAC that could make plausible their claim that Hearst acted with actual malice when it reported on published allegations of sexual harassment made against a candidate seeking to unseat the Speaker of the U.S. House of Representatives, the candidate's public denial of those allegations, and the reaction to the allegations from some of the candidate's supporters. Plaintiffs' amended pleading adds nothing to the factual allegations that the Court has already found lack even minimal merit given the substantive legal standards.

The only pled facts Plaintiffs point to for "actual malice" relate to a clutch of conclusory assertions about purportedly "numerous red flags" which they insist amounted to "obvious reasons" to conclude that Croydon was "known to be unreliable." But the Court has already

---

[3] Plaintiffs' reliance on non-defamation cases applying a "minimal merit" standard are inapposite. *See, e.g.*, Opp. 13 (citing *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260 (2006) (non-defamation case applying "minimal merit" reversing denial of anti-SLAPP brought over alleged malicious prosecution claim); *Ulkarim v. Westfield LLC*, 227 Cal. App. 4th 1266 (2014) (non-defamation case applying "minimal merit" standard to allegations related to breach of lease agreement)).

5
DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND SPECIAL
MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

considered the same factual allegations in detail and found them insufficient, as a matter of law, to meet Plaintiffs' actual malice burden.  Order 14-17.  The Court should do the same here because the FAC relies on exactly the same pleaded facts as the original Complaint: 1) an email from a Buttar Campaign representative offering to put the *Chronicle* in touch with preferred sources who, as described by Plaintiffs, had no actual knowledge about the truth of Croydon's claims about Buttar, but who could offer speculative views of her credibility based on unrelated conduct; 2) an email from a purported "national security expert" who, as described by Plaintiffs, also knew nothing about the credibility of Croydon's allegations about Buttar, but offered subjective views about her credibility based on unrelated conduct; and the alleged failure to include some of those subjective views about Croydon's credibility based on unrelated conduct contained in an Open Letter of support for Buttar, which was reported on in Hearst's Follow-Up Article.  *See, e.g.*, FAC ¶¶ 22-29, 36-39, 41, 45-47; Opp. 4-7, 14-16.

At best, Plaintiffs' arguments amount to an assertion that Hearst failed to conduct a sufficient investigation before publication.  Opp. 16-17.  But as the Court has already found, Plaintiffs' own allegations about what such further investigation might have yielded demonstrate that, rather than illuminate the truth or falsity of Croydon's claims against Buttar, it would have revealed, at best, only speculation by people with no direct knowledge of the truth or falsity of Croydon's claims.  Order 14-16 (finding Plaintiffs' own pleadings reflected that none of the people Plaintiffs assert the *Chronicle* should have contacted would have offered anything but speculation about Croydon's claims).

In any event, courts have made clear that failure to investigate alone is insufficient, as a matter of law, to show actual malice.  *See, e.g.*, *Wynn*, 75 F. Supp. 3d at 1239 (actual malice not pled, as a matter of law, where plaintiff failed to "provide any specific allegations that would support a finding that [defendant] harbored serious subjective doubts as to the validity" of challenged statements); *Resolute Forest*, 302 F. Supp. 3d at 1019 (same); *Tull*, 2021 WL 6116971, at *9 (same); *see also St. Amant v. Thompson*, 390 U.S. 727 (1968) (candidate's publication of unproven allegations about a rival candidate, while failing to investigate those

claims, was insufficient to prove actual malice, which requires a showing of a high degree of subjective awareness of probable falsity); *Widener v. Pac. Gas & Elec. Co.*, 75 Cal. App. 3d 415, 434 (1977), *disapproved on other grounds by McCoy v. Hearst Corp.*, 42 Cal. 3d 835, 846 n.9 (1986) (describing "actual malice" standard as requiring "sufficient evidence to permit an inference that the defendant must have, in fact, subjectively entertained serious doubts as to the truth of his statement.").

The few defamation cases Plaintiffs cite where courts found actual malice turned on facts that are, as this Court observed, "so far afield from the facts here that it does not affect, let alone alter, the analysis." Order 15 (finding Plaintiffs' reliance on *Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254 (1998) was misplaced); *see, e.g.*, Opp. 14 (citing *Curtis v. Butts*, 388 U.S. 130, 157 (1967) (sole source relied on in story accusing athletic director of conspiring to fix a football game was known by publisher to be "on probation in connection with bad check charges"); *Pep v. Newsweek*, 553 F. Supp. 1000 (S.D.N.Y. 1983) (source relied on in story alleging boxer fixed a boxing match described himself as a "pathological liar" and was known by publisher to have a criminal record); *Stevens v. Sun Publ'g Co.*, 240 S.E.2d 812 (S.C. 1978) (reporter recognized obvious bias of primary source).

As discussed above and in greater detail in Hearst's Opening Brief, Plaintiffs' pleaded factual allegations evidence nothing but generalized speculation and conclusory assertions, none of which are sufficient to "establish a reasonable probability that [they] can produce clear and convincing evidence showing that the statements were made with actual malice." *Young*, 212 Cal. App. 4th at 563; *see also Beilenson v. Superior Ct.*, 44 Cal. App. 4th 944 (1996) (finding unsuccessful candidate for U.S. Congress failed to meet clear and convincing standard applicable in libel action where candidate's claim turned, in part, on a failure to investigate, which, citing *St. Amant* and *Evans v. Unkow*, 38 Cal. App. 4th 1490 (1995), it held was insufficient to establish clear and convincing evidence of the probable falsity of the alleged libelous statements); *Conroy v. Spitzer*, 70 Cal. App. 4th 1446, 1454 (1999) (finding that statements at issue in unsuccessful candidate's libel claim were either true, based on other published reports or

7

on the candidate's own statements, and noting, "Even if the trial court did apply a clear and convincing standard rather than the appropriate standard of showing a probability of producing clear and convincing evidence of actual malice at trial, this is a distinction without a difference.")

## II.  PLAINTIFFS HAVE NOT COMPLIED WITH THE CORRECTION STATUTE

As explained in Hearst's Opening Brief, under California Civil Code § 48a(b), a libel plaintiff seeking to recover general or exemplary damages is required to (1) serve written notice to the publisher of an alleged libel within 20 days of knowledge of the publication, (2) specifying the allegedly libelous statements and (3) demanding correction.  A defamation plaintiff's failure to serve such a specific and timely demand for correction limits the plaintiff's recovery, as a matter of law, to special damages, which must be sufficiently pled to be recoverable.

In dismissing the initial complaint, the Court granted Plaintiffs an opportunity to replead only as to claims related to Hearst's Follow-Up Article.  But Plaintiffs fail to plead that they had *any* communication with Hearst following publication of its Follow-Up Article, much less a communication that satisfied the requirements of Cal. Civ. Code § 48a.  On this basis alone, they are barred, as a matter of law, from recovery of anything but sufficiently pled special damages.

Inexplicably, Plaintiffs assert in their FAC and Opposition that they satisfied the requirements of Cal. Civ. Code § 48a by serving a purported demand for correction on Hearst in an email sent to *San Francisco Chronicle* reporter Joe Garofoli by Patricia Brooks, a representative of the Buttar Campaign, at 5:44 a.m. on the morning of July 22, 2020, the day after Hearst's first article and three days *before* its Follow-Up Article.  Even if that email constituted a correction demand for the first article, which it does not, Plaintiffs offer no explanation of how it could constitute a correction demand for the Follow-Up Article, *which had not even been published*.  Regardless, the Court has already considered and rejected Plaintiffs' allegations, which are nearly identical in the FAC, that they made any valid correction demand.  Order 18-19.  The Court noted that Plaintiffs failed to allege any direct communication between Buttar and Hearst; that they failed to identify statements claimed to be libelous, and that they

8
DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC

failed to even ask for correction. *Id*. Indeed, the Court correctly found that the email "failed to demand any correction of Hearst's First Article consistent with" the correction statute, and that it instead "sought additional, follow-up coverage of the matter in the form of interviews with third parties . . . ." *Id*. Plaintiffs now allege that the email reached John Diaz, former Editorial Page editor for the *Chronicle*, and assert he was authorized to receive correction demands for the publisher. FAC ¶ 35; Opp. 6, 18. But even if this were accurate—and Plaintiffs offer no facts to support it—Plaintiffs offer no basis for overcoming the Court's finding that the email nevertheless failed to satisfy Cal. Civ. Code § 48a for various independent reasons. Order 18-19.

The correction statute requires that a correction demand identify specific statements that the requester considers libelous and seeks corrected. *See, e.g.*, *Kapellas v. Kofman*, 1 Cal. 3d 20, 31 (1969) (noting that a correction demand was sufficient where it specifically "labelled as libelous, and requested correction of" a series of specific statements contained in an article); *Freedom Newspapers, Inc. v. Super. Ct.*, 4 Cal. 4th 652, 654-56 (1992) (Section 48a(a) requires that a plaintiff "demand[] that [specific libelous statements] be corrected").

Here, even assuming the relevant email could be considered a demand for correction at all, Plaintiffs' pleaded allegations about their purported correction demand – sent before the Follow-up Article was even published – cannot demonstrate that they have met even this threshold standard. Their selective quoting of their purported correction demand fails to identify any specific statement at issue, and, more tellingly, fails to allege that it identified any statement as libelous or defamatory, or that it used the words "correction" or "demand." As the Court has already found, the email is more accurately characterized as a request for follow-up coverage in the form of interviews of Plaintiffs' selected sources. Order 18. A review of the email itself reflects that this is precisely what it sought. Ibarguen Reply Decl. Ex 1 ("As a volunteer for the campaign working on media relations, who at this point spent more time with the campaign than some of the staff who left, I feel there are a number of voices that were left out of the first story. Due to time limits, we did not have time to arrange. Can we do a follow up today or soon? . . . We would like a story that offers Shahid the opportunity to give his perspective here and invites

others who are closer to this situation. We gave a limited response, but given more time, we could really tell a much bigger picture. Can you advise on what opportunities might be available for that?") Plaintiffs do not—and cannot—plausibly plead that they have complied with the requirements of Civil Code § 48a.

Because Plaintiffs have failed to plausibly plead compliance with the correction statute, they are barred, as a matter of law, from recovery of general or exemplary damages.[4]

### III. PLAINTIFFS FAIL TO PLEAD DAMAGES WITH SUFFICIENT SPECIFICITY

As discussed in Hearst's Opening Brief, Plaintiffs' failure to satisfy the requirements for a correction demand under section 48a limits their recovery, as a matter of law, to special damages. Special damages are defined in the correction statute as "damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a(d)(2); *Freedom Newspapers*, 4 Cal. 4th at 654-56; *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013) (noting that special damages are actual out-of-pocket losses and must be pled with specificity). Where a plaintiff fails to serve a correction demand and also fails to adequately plead special damages, the claims fail on their face and must be stricken under the anti-SLAPP statute. *Anschutz Ent. Grp., Inc. v. Snepp*, 171 Cal. App. 4th 598, 643 (2009) (dismissing defamation claims under anti-SLAPP where no legally enforceable correction demand was served by the plaintiff and where special damages were pled only through generalized allegations of indeterminate damages and plaintiff "presented no proof of special damages"). Here, Plaintiffs rely on speculative and unsupported allegations regarding the Buttar Campaign's lost potential campaign donations and volunteer time, Buttar's unsuccessful

---

[4] Even if Plaintiffs had served a valid demand for correction, which they did not, in order to recover exemplary damages, they would be required, as a matter of law, to prove that Hearst acted with actual malice in publishing its Follow-up Article about the allegations made against Buttar. Cal. Civ. Code § 48a(3). For the same reasons explained above and in the Opening Brief, Plaintiffs cannot prove actual malice on the facts pled in the FAC.

efforts to find employment matching his expectations, and on a purported lack of opportunities to "speak publicly" and "secure a book contract." FAC ¶¶ 85-86, 89-92. These speculative allegations are insufficient to satisfy their pleading burden.

Plaintiffs are further foreclosed from any recovery in this action because they fail to plead any concrete and quantifiable injury, much less damages sufficient to satisfy the minimum requirements for pleading special damages. Plaintiffs make only generalized allegations of injury purportedly suffered by Buttar individually, and make *no* allegations of injury specific to the Campaign. FAC ¶¶ 59, 61-62. The Court has already found such generalized and speculative allegations of injury are insufficient to plead special damages. Order 19-20; *Gang v. Hughes*, 111 F. Supp. 27, 29 (S.D. Cal. 1953) ("[G]eneral allegation of loss of business" is insufficient to show special damages, for which "plaintiff must allege the specific manner in which he lost business as a result of the defamation"); *Pridonoff v. Balokovich*, 36 Cal. 2d 788, 792 (1951) ("general allegation of the loss of a prospective employment, sale, or profit will not suffice").

Furthermore, as explained in Hearst's Opening Brief, even if Plaintiffs had pled injury with sufficient specificity, they fail to sufficiently plead that *any* alleged damages are attributable specifically to Hearst's Reporting on this public controversy. Rather, just as the Court found with regard to the initial complaint, "this defect is apparent on the face" of Plaintiffs' FAC, which reveals the impossibility of demonstrating that any specific damages Plaintiffs might have plausibly pled resulted solely from Hearst's reporting. *See* FAC ¶ 17 (alleging that Hearst's reporting was based on and followed publication of Croydon's Essay detailing her allegations); ¶ 19 (alleging that Buttar Campaign provided a public statement from Buttar regarding Croydon's allegations before Hearst published on Croydon's allegations); ¶ 57 (alleging that "Croydon's false accusations were immediately and consistently seized upon by critics across the political spectrum – including the so-called 'K-Hive', an organized network of certain supporters of Vice President Kamala Harris."); ¶ 58 (alleging that "local media outlets such as the San Francisco *Bay Guardian*, *48 Hills*, and *Mission Local* published their own stories that referenced Ms.

Croydon's false allegations."). Plaintiffs cannot, as a matter of law, prove that any injury, much less any specific damages, were suffered directly as a result of Hearst's Reporting on this widely discussed matter of public interest. Cal. Civ. Code § 48a(d)(3); *Anschutz*, 171 Cal. App. 4th at 643 (dismissing defamation action pursuant to anti-SLAPP where plaintiff fails to plead special damages with specificity and presented no evidence of such losses).

### IV.   PLAINTIFFS CANNOT CURE THE COMPLAINT'S DEFICIENCIES THROUGH AMENDMENT

Plaintiffs conclude their opposition by, again, requesting that the Court grant them leave to amend their FAC. Opp. 22 n.96. In granting Plaintiffs an opportunity to amend their initial complaint, the Court noted that it did so in light of the Ninth Circuit's holding that granting a motion to strike under a state anti-SLAPP statute without providing an opportunity for amendment of plaintiff's *initial* complaint would conflict with the Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment. Order 20. However, the Court held that amendment as to claims based on Hearst's first article would be futile (*id.* at 21) and further noted that "it appears unlikely that Plaintiffs will be able to cure the deficiencies in their complaint . . . ." *Id*. at 20. As detailed above and in Hearst's Opening Brief, despite having more than three months to amend their pleading following the Order, Plaintiffs' FAC fails to allege any new facts that remedy the pleading defects the Court detailed in its Order. Having failed twice, Plaintiffs offer the Court no basis to conclude that they will be able to cure their pleading deficiencies through yet another opportunity to amend. Because any further amendment would be futile, Plaintiffs' request for leave to amend should be denied.

### CONCLUSION

For these reasons, and for the reasons explained in Hearst's Opening Brief, Hearst respectfully requests that this Court dismiss Plaintiffs' FAC in its entirety with prejudice under Federal Rule of Civil Procedure 12(b)(6) and California's anti-SLAPP law, and award Hearst its mandatory fees and costs incurred in connection with this motion, in an amount to be determined by future motion.

| | | |
|---|---|---|
| 1 | DATED: November 14, 2022 | Respectfully submitted, |
| 2 | | DAVIS WRIGHT TREMAINE LLP |
| | | THOMAS R. BURKE |
| 3 | | THE HEARST CORPORATION |
| 4 | | JONATHAN R. DONNELLAN (*pro hac vice*) |
| | | DIEGO IBARGUEN (*pro hac vice*) |
| 5 | | By:   /s/ Diego Ibarguen |
| 6 | | *Attorneys for Defendant Hearst Communications, Inc.* |

13

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT
CASE NO. 3:21-CV-05566-EMC