1  THOMAS R. Burke (CA State Bar No. 141930)
       thomasburke@dwt.com
2  DAVIS WRIGHT TREMAINE LLP
   505 Montgomery Street, Suite 800
3  San Francisco, California 94111-6533
   Telephone: (415) 276-6500
4  Facsimile: (415) 276-6599

5  JONATHAN R. DONNELLAN
       jdonnellan@hearst.com (*pro hac vice*)
6  DIEGO IBARGUEN
       dibarguen@hearst.com (*pro hac vice*)
7  HEARST CORPORATION
   300 W. 57th Street, 40th Floor
8  New York, New York 10019
   Telephone: (212) 841-7000
9  Facsimile: (212) 554-7000

10 Attorneys for Defendant
   HEARST COMMUNICATIONS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| SHAHID BUTTAR FOR CONGRESS COMMITTEE, et al., | Case No. 3:21-cv-05566-EMC |
|---|---|
| Plaintiffs, | **DEFENDANT HEARST COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS** |
| vs. | |
| HEARST COMMUNICATIONS, INC., | **[Cal. Civ. Proc. Code § 425.16]** |
| Defendant. | Judge:  Hon. Edward M. Chen<br>Date:   April 6, 2023<br>Time:   1:30 p.m.<br>Place:  Courtroom 5, 17th Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 6, 2023, at 1:30 p.m. in Courtroom 5, 17th Floor of the United States District Court for the Northern District of California, located in the San Francisco Courthouse at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Hearst Communications, Inc., ("Hearst") will and hereby does move this Court for an order compelling Plaintiffs Shahid Buttar for Congress Committee and Shahid Buttar (collectively, "Buttar" or

1

"Plaintiffs") to reimburse Defendant for its attorneys' fees and costs that they have incurred in connection with their successful motion to strike pursuant to California Code of Civil Procedure § 425.16 (the "anti-SLAPP Motion"), and in preparing this Fees Motion.  In particular, this Fees Motion seeks attorneys' fees in the amount of $79,759.55 and costs in the amount of $634 that Defendant has incurred as the prevailing party in this action pursuant to the Court's Order entered on February 16, 2023 (the "Feb. 16 Order") (ECF No. 67), as well as additional fees related to this Fees Motion and any as yet unbilled outside counsel fees, a full accounting of which will be included with Defendant's Reply memorandum on this motion.

    Defendant submits this Fees Motion pursuant to the Feb. 16 Order, California Code of Civil Procedure § 425.16(c)(2), Rule 54(d) of the Federal Rules of Civil Procedure, and L.R. 54-5(b).  This Fees Motion is based on this Notice; on the attached Memorandum of Points and Authorities; the Declaration of Thomas R. Burke with Exhibit A; the Declaration of Diego Ibarguen with Exhibits A-D; on all matters of which this Court may take judicial notice on all pleadings, files, and records in this action; and on such other argument as may be received by this Court at the hearing on this Fees Motion.

    This Motion is made following the conference of counsel pursuant to L.R. 54-5(a), which took place on a telephonic conversation on February 28, 2023 and in subsequent email correspondence, wherein counsel for the parties were unable to reach agreement upon the issues with respect to this motion.

DATED:  March 2, 2023

THOMAS R. BURKE
DAVIS WRIGHT TREMAINE LLP

JONATHAN R. DONNELLAN (*pro hac vice*)
DIEGO IBARGUEN (*pro hac vice*)
HEARST CORPORATION

By:    /s/ Diego Ibarguen             

Attorneys for Defendant
HEARST CORPORATION

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

I.     PROCEDURAL HISTORY ................................................................................................. 4

II.    FEE SHIFTING UNDER THE ANTI-SLAPP STATUTE IS MANDATORY ................ 5

III.   DEFENDANT'S FEE REQUEST IS REASONABLE ...................................................... 8

CONCLUSION ................................................................................................................................... 12

**TABLE OF AUTHORITIES**

Page(s)
**Cases**

*Barry v. State Bar*,
  2 Cal. 5th 318 (2017) ...................................................................................................2

*Belli v. Curtis Publ'g Co.*,
  25 Cal. App. 3d 384 (1972) ..........................................................................................9

*Braun v. Chronicle Publ'g Co.*,
  52 Cal. App. 4th 1036 (1997) .....................................................................................10

*Calvo Fisher & Jacob LLP v. Lujan*,
  234 Cal. App. 4th 608 (2015) .....................................................................................11

*Carver v. Bonds*,
  135 Cal. App. 4th 328 (2005) .....................................................................................10

*Charlebois v. Angels Baseball LP*,
  993 F. Supp. 2d 1109 (C.D. Cal. 2012) ......................................................................12

*Christian Rsch. Inst. v. Alnor*,
  165 Cal. App. 4th 1315 (2008) ...................................................................................11

*Church of Scientology v. Wollersheim*,
  42 Cal. App. 4th 628 (1996) ...................................................................................9, 10

*eCash Techs., Inc. v. Guagliardo*,
  210 F. Supp. 2d 1138 (C.D. Cal. 2001) ........................................................................6

*Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*,
  230 F. Supp. 3d 1146 (N.D. Cal. 2017) ........................................................................8

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ......................................................................................................9

*Graham-Sult v. Clainos*,
  756 F.3d 724 (9th Cir. 2013) ........................................................................................7

*Int'l Longshoremen's & Warehousemen's Union v. L.A. Export Terminal, Inc.*,
  69 Cal. App. 4th 287 (1999) .......................................................................................11

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ....................................................................................... passim

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*,
   39 Cal. App. 4th 1379 (1995) .................................................................................... 4, 7

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
   838 F.2d 1287 (D.C. Cir. 1988) ....................................................................................... 9

*Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*,
   655 F.3d 1171 (9th Cir. 2011) ......................................................................................... 6

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988) ....................................................................................... 10

*Metabolife Int'l, Inc. v. Wornick*,
   213 F. Supp. 2d 1220 (S.D. Cal. 2002) ........................................................................ 7, 9

*Moore v. Liu*,
   69 Cal. App. 4th 745 (1999) ....................................................................................... 7, 10

*New.Net, Inc. v. Lavasoft*,
   356 F. Supp. 2d 1090 (C.D. Cal. 2004) ........................................................................... 6

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ........................................................................................... 6

*Peak-Las Positas Partners v. Bollag*,
   172 Cal. App. 4th 101 (2009) ..................................................................................... 3, 11

*Pfeiffer Venice Props. v. Bernard*,
   101 Cal. App. 4th 211 (2002) ........................................................................................... 8

*Piping Rock Partners, Inc. v. David Lerner Assocs.*,
   No. 12-cv-04634, 2015 WL 4932248 (N.D. Cal. Aug. 18, 2015) .................................... 11

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ........................................................................................... 6

*Ray Charles Found. v. Robinson*,
   919 F. Supp. 2d 1054 (C.D. Cal. 2013) ........................................................................... 6

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   No. 17-cv-02824, 2020 WL 8877818 (N.D. Cal. Apr. 22, 2020) ..................................... 6

*Schroeder v. Irvine City Council*,
   97 Cal. App. 4th 174 (2002) ............................................................................................. 5

*Serrano v. Unruh*,
   32 Cal. 3d 621 (1982) ......................................................................................... 8, 9, 11

iii

*Smith v. Fireside Thrift Co.*,
    No. C 07-03883, 2007 WL 2729329 (N.D. Cal. Sept. 18, 2007) .............................................6

*Thomas v. Fry's Electronics, Inc.*,
    400 F.3d 1206 (9th Cir. 2005) ................................................................................................5

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................................6

*Wilkerson v. Sullivan*,
    99 Cal. App. 4th 443 (2002) ................................................................................................2, 7

**Statutes**

Cal. Civ. Proc. Code § 425.16 ................................................................................................ *passim*

iv

# MEMORANDUM OF POINTS AND AUTHORITIES

This lawsuit was a misguided effort to punish a newspaper for its timely and accurate reporting on a public controversy relevant to voters' consideration and evaluation of Plaintiff Shahid Buttar's ("Buttar") character and qualifications to hold elected office. He, together with Plaintiff Shahid Buttar for Congress Committee (collectively, the "Buttar Plaintiffs"), brought the underlying defamation action against Defendant Hearst Communications, Inc. ("Hearst"), publisher of the San Francisco *Chronicle* ("*Chronicle*"), based on two July 2020 articles published by the *Chronicle* (the "*Chronicle*'s Articles"). The *Chronicle*'s Articles reported on allegations that Buttar, then a candidate for Speaker Nancy Pelosi's seat in the U.S. House of Representatives, sexually harassed an individual several years earlier. The *Chronicle*'s Articles summarized the substance of these allegations, which were made by Elizabeth Croydon ("Croydon") and published in an online essay on the website *Medium*. The *Chronicle*'s articles also included Buttar's public denial of those allegations, and they reported on the actions taken in response to the allegations by some who had previously endorsed Buttar's candidacy and others who vouched for Buttar's character and expressed doubts about the allegations.

In granting Hearst's motion to dismiss the original Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) and California's anti-SLAPP statute (Cal. Civ. Proc. Code § 425.16) (ECF No. 39, the "First MTD Order"), the Court provided a comprehensive listing of the fatal deficiencies of the Buttar Plaintiffs' initial pleading. The Court dismissed claims stemming from the first of the *Chronicle's* Articles with prejudice, finding that any amendment of such claims would be futile. The Court permitted Plaintiffs to amend their pleading <u>only</u> as to claims stemming from the second of the *Chronicle*'s Articles. However, Plaintiffs' amended pleading failed to add factual allegations or legal arguments sufficient to cure any of the fatal pleading deficiencies previously identified by the Court, and, in response to Hearst's second motion to dismiss (Hearst's "Second MTD"), the Court dismissed Plaintiffs' First Amended Complaint in its entirety with prejudice. ECF No. 67 (the "Feb. 16 Order").

California's anti-SLAPP statute was designed precisely to guard against the chilling effect of lawsuits like this, which sap defendants' resources even when the claims lack merit. To achieve this purpose, the anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike ***shall be entitled*** to recover that defendant's attorney's fees and costs." Cal. Code Civ. Proc. § 425.16(c)(1) (emphasis added). The fee-shifting provision is mandatory, *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001), and must be "broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating herself from a baseless lawsuit." *Wilkerson v. Sullivan*, 99 Cal. App. 4th 443, 446 (2002). As the California Supreme Court has recognized, "[b]ecause SLAPPs seek to deplete the defendant's energy and drain his or her resources, the anti-SLAPP statute contains several provisions designed to limit the costs of defending against such a lawsuit and to prevent SLAPPs by ending them early and without great cost to the SLAPP target." *Barry v. State Bar*, 2 Cal. 5th 318, 321-22 (2017) (citations and quotation marks omitted). The mandatory fee-shifting provision is one of these key protections. *Id*. at 322.

The Buttar Plaintiffs' claims against Defendant directly targeted free speech on matters of public concern, as they arose entirely in the context of news reporting on a matter of public interest related to a candidate seeking elected office. Indeed, in opposing Defendant's anti-SLAPP motions, the Buttar Plaintiffs did not dispute that their claims targeted free speech on matters of public concern. *See* ECF No. 55 at 12 n.51. Because fee shifting is mandatory under the anti-SLAPP statute, the only issue before the Court is the amount of the fee award. Defendant's request is reasonable, and should be awarded in full.

***First***, Defendant seeks reimbursement based on the reasonable hourly rates charged by their outside counsel Thomas R. Burke of Davis Wright Tremaine LLP. The rates are reasonable in light of Mr. Burke's experience and expertise, and well within the range charged by comparable lawyers handling First Amendment litigation in Northern California. *Id*.

***Second***, Defendant seeks reimbursement of its in-house legal counsel's work performed solely relating to its anti-SLAPP Motion to dismiss the original Complaint and the First Amended Complaint.

***Third***, the number of hours for which Defendant seeks reimbursement is reasonable given Defendant's complete success on early dismissal with prejudice of the Buttar Plaintiffs' claims, the importance of the litigation, and the complexity of the issues involved. The Buttar Plaintiffs' own pleadings – which centered on ill-conceived theories of the standards applicable to public figure defamation actions, fundamental misunderstandings of the requirements of California's retraction statute, and vague and unsupported assertions of damages, all of which were rejected by the Court in dismissing the Complaint and none of which were remedied by the Buttar Plaintiffs in their First Amended Complaint – significantly drove up defense costs, requiring Defendants to investigate, research, and brief several bases for dismissal. Indeed, the Buttar Plaintiffs' decision to file a First Amended Complaint that failed in any significant way to address the deficiencies identified by the Court in its First MTD Order forced additional motion practice under the anti-SLAPP statute that could have been avoided. Defendant is entitled to recover the resulting fees and costs, as Plaintiffs "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response." *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) (citation omitted).

For all these reasons, Defendant requests that the Court grant this Motion and award them attorneys' fees in the amount of $79,759.55 plus any as yet unbilled outside counsel fees, and additional fees incurred in preparing this Fees Motion and the Reply in support thereof and in appearing at the hearing on this Motion (should the Court decide to schedule a hearing), as well as $634 in costs. *See* Declaration of Diego Ibarguen ("Ibarguen Decl.") ¶¶ 18-25 and Exs. A-D.[1]

---

[1] Defendants have incurred fewer than 20 hours of time in connection with this Fees Motion to date, and will provide supplemental evidence with their Reply to support a request for any additional fees and costs incurred through the hearing on this Fees Motion or from as yet unbilled outside counsel fees, as well as any other proceedings initiated by Plaintiffs in connection with the SLAPP Motions. *See* Ibarguen Decl. ¶ 7.

## I. PROCEDURAL HISTORY

Plaintiffs filed their original Complaint on July 20, 2021, (ECF No. 1, the "Complaint") alleging the "*Chronicle* published Ms. Croydon's false allegations with actual malice," and "failed to contact individuals . . . [who] would have provided details of Ms. Croydon's history of lobbing false allegations . . . ." Compl. ¶¶ 57-58; *see also*, Feb. 16 Order at 7-8.[2] The allegations stemmed from the *Chronicle*'s Articles published on July 22, 2020 and July 25, 2020 which summarized the substance of allegations made by Elizabeth Croydon ("Croydon") and published in an online essay on the website *Medium* in which she alleged Plaintiff Buttar sexually harassed her several years earlier. The *Chronicle*'s Articles also included Buttar's public denial of those allegations, and they reported on the actions taken in response to the allegations by some who had previously endorsed Buttar's candidacy and others who vouched for Buttar's character and expressed doubts about the allegations.

Hearst moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) and Cal. Civ. Proc. Code § 425.16(b)(1). ECF No. 27, Hearst's "First Motion to Dismiss." Following full briefing and oral argument, the Court granted the First Motion to Dismiss in its entirety, finding that Plaintiffs failed to state a claim of defamation under the anti-SLAPP statute, and failed to state a derivative claim under the state unfair competition law. First MTD Order at 20. The Court dismissed with prejudice as to claims based on the first of the *Chronicle*'s Articles, finding, among other things, that Plaintiffs failed to meet their burden of pleading actual malice based on a purported failure to investigate or to contact certain individuals. *Id.* at 14-15. The Court granted Plaintiffs an opportunity to amend solely as to claims stemming from the second of the *Chronicle*'s Articles, though the Court noted "it appears unlikely that Plaintiffs will be able to cure the deficiencies in their complaint . . . ." *Id*. at 20-21.

Plaintiffs filed their First Amended Complaint (the "FAC") on August 12, 2022, repeating nearly verbatim the factual allegations of the original Complaint and failing to plead

---

[2] The Complaint also alleged a wholly derivative claim that Hearst violated California's unfair competition law by "maliciously defaming" the Buttar Plaintiffs. Compl. ¶¶ 65-66.

any new factual content or legal arguments addressing the deficiencies identified by the Court in dismissing the original Complaint. *See* FAC, ECF No. 46; Feb. 16 Order at 8-9. Hearst filed its Second Motion to Dismiss, again pursuant to the anti-SLAPP statute on Sept. 23, 2022 (ECF No. 47), which Plaintiffs opposed on October 21, 2022 (ECF. No. 55, Plaintiffs' "Second MTD Opp.").

Following oral argument on February 2, 2023, the Court granted Hearst's Second Motion to Dismiss with prejudice, noting Plaintiffs' failure again to plead facts sufficient to show falsity (Feb. 16 Order at 15) or actual malice (*id.* at 17), and concluding that Plaintiffs' claims were barred by the anti-SLAPP statute. *Id.* at 19. Because Plaintiffs' FAC "again fail[ed] to survive the motion to dismiss under the anti-SLAPP statute, this time the Court dismisse[d] the FAC with prejudice." *Id.*

## II.     FEE SHIFTING UNDER THE ANTI-SLAPP STATUTE IS MANDATORY

In *Ketchum*, the California Supreme Court emphasized that "any SLAPP defendant who brings a successful motion to strike is entitled to **mandatory** attorney fees." 24 Cal. 4th at 1131 (emphasis added). *See also Schroeder v. Irvine City Council*, 97 Cal. App. 4th 174, 193-94 (2002) (rejecting limitations on SLAPP statute's fee-shifting provision as being "inconsistent with the mandatory language of section 425.16, subdivision (c) . . . ."). The Court recognized that the SLAPP fee award is designed to discourage litigation arising in connection with the exercise of free speech rights, "by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional right[] of freedom of speech[.]'" *Ketchum*, 24 Cal. 4th at 1131. "[T]he legislative aim in including the attorney fee provision was apparently to strengthen enforcement of certain constitutional rights, including freedom of speech . . . by placing the financial burden of defending against so-called SLAPP actions on the party abusing the judicial system . . . ." *Id.* at 1136.

The Ninth Circuit has held that section 425.16(c)'s mandatory fee-shifting provision applies in federal diversity cases, like this one. In *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005), for example, the court unequivocally declared that "California anti-

5

DEFENDANT'S NOTICE OF MOTION, MOTION AND MPA FOR ATTORNEYS' FEES AND COSTS
CASE NO. 3:21-CV-05566-EMC

SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court . . . ." *See also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-34 (9th Cir. 2018) (when a motion to strike under the California anti-SLAPP statute challenges only the legal sufficiency of a claim, a district court should apply the standard of a motion to dismiss for failure to state a claim and consider whether a claim is properly stated); *Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011) (affirming award of attorneys' fees to prevailing defendants on SLAPP motion); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) (same); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971-73 (9th Cir. 1999) (section 425.16(c) applies in federal court).

Consistent with these authorities, federal district courts have routinely held that a party who prevails on an anti-SLAPP motion is entitled to an award of fees under section 425.16(c). *See, e.g.*, *Smith v. Fireside Thrift Co.*, No. C 07-03883, 2007 WL 2729329, at *2 (N.D. Cal. Sept. 18, 2007) (Alsup, J.) (noting that "California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court," and finding the prevailing defendants on an anti-SLAPP motion were entitled to fees) (citation omitted); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-cv-02824, 2020 WL 8877818 (N.D. Cal. Apr. 22, 2020) (awarding attorneys' fees and costs to defendants after granting anti-SLAPP motion); *Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1067 (C.D. Cal. 2013) ("[b]ecause Defendants have prevailed on their anti-SLAPP motion, attorney's fees are mandatory and the Court awards them."), *rev'd on other grounds*, 795 F.3d 1109 (9th Cir. 2015); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004) ("defendant who prevails on an anti-SLAPP motion to strike is entitled to recover his or her attorney fees"); *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1154 (C.D. Cal. 2001) ("[t]he attorneys' fees provision of Section 425.16 also applies in federal court, and declares that an award of attorneys' fees to a moving party is mandatory if a special motion to strike is granted").

Because the purpose of section 425.16's fee-shifting provision is to give "financial relief in the form of attorney's fees and costs" to defendants who have been subject to SLAPP lawsuits, *e.g.*, *Moore v. Liu*, 69 Cal. App. 4th 745, 750 (1999), and to discourage SLAPP suits by "imposing the litigation costs on the part[ies]" filing them, the statutory provision does not include any limitations or qualifications on the amount of fees and costs recoverable, other than that the fees be reasonable, *e.g.*, *Ketchum*, 24 Cal. 4th at 1131, 1139 (noting "the absence of any indication by the Legislature of the intent to specially limit attorney fees in anti-SLAPP actions"); Cal. Civ. Proc. Code § 425.16(c). Indeed, the California Legislature has mandated a "broad" interpretation of the statute that encourages *fully* reimbursing defendants who prevail on an anti-SLAPP motion. *See* Cal. Civ. Proc. Code § 425.16(a); *Wilkerson v. Sullivan*, 99 Cal. App. 4th 443, 446 (2002) (section 425.16 must be "broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant"); *see also Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2013) ("[T]he provision is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." (citation omitted)). It is thus well established that a defendant who prevails under section 425.16 is entitled to recover all fees and costs incurred in connection with the successful prosecution of an anti-SLAPP motion. *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 39 Cal. App. 4th 1379, 1383 (1995); *see Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1223 (S.D. Cal. 2002) ("[T]he entire lawsuit is subject to the anti-SLAPP motion because all causes of action against [defendant] relate to free speech and all of the activity by [defendant's] attorneys occurred in the context of, and were inextricably intertwined with, the anti-SLAPP motion. . . . All of [defendant's] attorney fees and expenses were incurred 'in connection with' the anti-SLAPP motion.") (footnote omitted).

Finally, attorneys' fees under the anti-SLAPP statute are available once such a motion is made, even if the case is dismissed *without* reaching the merits of the anti-SLAPP arguments. This is necessary to give effect to the statute's "mandatory" award of fees. Accordingly, a "'trial court must, upon defendant's motion for a fee award, rule on the merits of the SLAPP motion'

7

even if the matter was dismissed before reaching said merits." *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1152 (N.D. Cal. 2017) (Alsup, J.) (quoting *Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211, 215 (2002)).

Here, Defendant's anti-SLAPP motions to dismiss were meritorious for the reasons set out in Defendant's briefing on those motions.  *See* Hearst's briefing on its First and Second Motions to Dismiss, ECF Nos. 27, 33, 47, 56.  The Court's Feb. 16 Order, moreover, like the First MTD Order, dismissed Defendant's claims on the basis of several arguments explicitly raised in Defendant's anti-SLAPP Motion – including, among others, that Plaintiffs had failed to satisfy their pleading burdens as to falsity and actual malice, and that the claims were barred under the anti-SLAPP statute.  *See* Feb. 16 Order at 15, 17, 19.  Thus, Defendant is entitled to a full mandatory fee award in connection with its anti-SLAPP Motion.

Defendant is also entitled to recover its reasonable attorneys' fees incurred in connection with this Fees Motion.  *See Ketchum*, 24 Cal. 4th at 1141 (prevailing defendant's award must include "the fees incurred in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16"); *accord Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982) (recoverable fees "include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim").

### III.   DEFENDANT'S FEE REQUEST IS REASONABLE

Under California law, courts calculate an award of attorneys' fees by determining a lodestar figure "based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type." *Ketchum*, 24 Cal. 4th at 1133.  Defendant's request is reasonable as to both the rates and hours sought, especially in light of the scope of this lawsuit, which alleged millions of dollars in dollars in damages.  *See* FAC ¶¶ 63-93.

When deciding whether a SLAPP defendant's fee request is "reasonable," a court "may and *should* consider 'the nature of the litigation, its difficulty, the amount involved, the skill

required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded; the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed.'" *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 659 (1996) (citations omitted), *disapproved on other grounds by Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68 n.5 (2002).

Under the anti-SLAPP statute, the Court should award all reasonable fees incurred in defending the action. This principle is consistent with the policy behind the statute; namely, to discourage meritless litigation that threatens to chill the exercise of free speech rights about issues of public interest. Courts have long recognized that the cost of successfully defending a libel action can have a chilling effect on a publisher's First Amendment rights. *See, e.g.*, *Belli v. Curtis Publ'g Co.*, 25 Cal. App. 3d 384, 389 (1972) (unwarranted and expensive litigation itself threatens to chill free speech rights); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1303 (D.C. Cir. 1988) (a reporter "will have to think twice about publishing where litigation, even to a successful motion for summary judgment, can be very expensive if not crippling").

The mandatory fee award must also include the fees and costs that a successful anti-SLAPP defendant incurs in preparing the motion for fees and other motions associated with the motion to strike. *See Ketchum*, 24 Cal. 4th at 1141 (an award of fees properly includes "the fees incurred in enforcing the right to mandatory fees under Code of Civil Procedure Section 425.16"); *see also Serrano*, 32 Cal. 3d at 639 (recoverable fees "include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim"); *Metabolife*, 213 F. Supp. 2d at 1223 (successful motion to strike under section 425.16(c) entitles defendant to "[a]ll of [defendant's] attorney fees and expenses [] incurred 'in connection with' the anti-SLAPP motion").

Applying these criteria, Hearst's requested fees and costs are entirely reasonable.

*First*, the "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation and quotation

marks omitted).  Hearst's anti-SLAPP Motion was entirely successful because it resulted in the dismissal with prejudice of all of the Buttar Plaintiffs' claims.  Courts have recognized that "[w]here, as here, a prevailing party has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass *all hours reasonably expended on the litigation*[.]"  *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (emphasis added) (citation and quotation marks omitted).  This Court's order striking Plaintiffs' First Amended Complaint and the award of mandatory fees under section 425.16, will hopefully discourage Plaintiffs from pursuing similar baseless litigation in the future and other like-minded plaintiffs from attempting to punish news organizations for exercising their right to constitutionally protected speech.

**Second**, Hearst's anti-SLAPP motion vindicated important First Amendment rights.  *See Wollersheim*, 42 Cal. App. 4th at 659 (reasonableness of fees includes consideration of the "importance of the litigation").  The Buttar Plaintiffs' lawsuit targeted Hearst's free speech in connection with issues of public concern.  Publications on issues of public interest, like the *Chronicle*'s Articles here, "advanc[e] the 'highest rung' of First Amendment values."  *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1047 n.5 (1997) (affirming grant of media organization's SLAPP motion and award of attorneys' fees); *see also Carver v. Bonds*, 135 Cal. App. 4th 328, 343-44 (2005) (same).

Consistent with the SLAPP statute's goals, reimbursement of expenses to prevailing defendants – here, a newspaper reporting on a public controversy relevant to a candidate for elected office's qualifications and character — are necessary to avoid the "chill" on protected speech that litigation like this can cause, and also to discourage plaintiffs from attempting to retaliate against speakers for engaging in activity protected by the First Amendment.  *See Moore*, 69 Cal. App. 4th at 748 (explaining that Legislature intended the SLAPP statute's fee-shifting provision both as "monetary relief" to prevailing defendants and also "the punishment which section 425.16 imposes on persons who use the courts to chill others' exercise of their constitutional rights").  Hearst's successful defense vindicated vital free speech rights, further justifying their fee request.  *See Wollersheim*, 42 Cal. App. 4th at 659.

***Third***, Defendant's request is reasonable given the issues raised by the Complaint and FAC.  Courts deciding fee motions have recognized that "most anti-SLAPP motions . . . tend to present complex issues." *Piping Rock Partners, Inc. v. David Lerner Assocs.*, No. 12-cv-04634, 2015 WL 4932248, at *5 (N.D. Cal. Aug. 18, 2015).  *See also Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1319 (2008) ("SLAPP motions are generally difficult").  Consequently, in *Piping Rock Partners*, the Court found that the fee award was supported by the fact that the "anti-SLAPP motion at issue involved roughly a dozen defamatory statements, three causes of action, and complex issues of law."  2015 WL 4932248, at *5.  Here, Plaintiffs' pleadings together alleged defamation in the entirety of two articles due to their inclusion of allegations made against a candidate for elected office and the purported omission of information about the character of the accuser and the substance of criticisms of the accuser by some, creating an alleged overarching failure to investigate the accuser's credibility.  These allegations required Defendant to research and brief numerous legal bases for dismissal, requiring considerable time and effort, as evidenced in the briefing on its motions to dismiss.  The complexity of these issues required Defendant to expend the requisite time to respond.

As one California court noted, a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response." *Peak-Las Positas Partners*, 172 Cal. App. 4th at 114 (quoting *Int'l Longshoremen's & Warehousemen's Union v. L.A. Export Terminal, Inc.*, 69 Cal. App. 4th 287, 304 (1999)).  *See also Serrano*, 32 Cal. 3d at 634 n.18 (opposing party's litigation tactics help determine reasonableness of prevailing party's hours); *Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 627 (2015) (affirming fee award, noting that "the amount of attorney fees incurred by [the prevailing party] was increased by [the opposing party's] own conduct . . . .").

***Fourth***, this case was managed efficiently and economically.  The case was staffed leanly, with just one in-house attorney and one outside attorney performing the substantive work for which attorneys' fees are sought.  Furthermore, the vast majority of the legal work in this matter was performed by in-house counsel.  Mr. Ibarguen has been practicing law primarily in

the area of media law for more than 15 years and oversaw all aspects of the day-to-day management of this matter, including legal research, preparation of drafts of all papers relating to the anti-SLAPP motions, and preparation for and oral argument on these motions. Ibarguen Decl. ¶¶ 15, 17. Mr. Burke, a litigator with three decades of experience in the field of media law, provided valuable legal advice on Hearst's legal strategy, offered comments on all papers filed by Hearst, and helped prepare Mr. Ibarguen for oral argument, therefore accruing fewer hours at his relatively higher rates. *See* Declaration of Thomas R. Burke ("Burke Decl.") ¶ 7. While several Hearst in-house attorneys also contributed substantially to the development of Hearst's legal strategy, advised on Hearst's papers, and assisted in preparing Mr. Ibarguen for oral argument, Hearst does not seek recovery of fees associated with such work. Ibarguen Decl. ¶ 18. This arrangement underscores the reasonableness of Defendant's request. *See Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1123 (C.D. Cal. 2012) (counsel "efficiently staffed this matter" where associate handled bulk of drafting "with oversight by an experienced partner").

## CONCLUSION

Hearst respectfully requests that this Court award them $79,759.55 in attorneys' fees and $634 in costs incurred in this lawsuit, as well as additional fees and costs to be incurred in connection with as yet unbilled outside counsel fees, this Fees Motion, the Reply to any opposition to this Motion, and time and costs spent and incurred in preparation for and at the hearing on this Motion.

DATED:  March 2, 2023

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE

THE HEARST CORPORATION
JONATHAN R. DONNELLAN (*pro hac vice*)
DIEGO IBARGUEN (*pro hac vice*)

By:      /s/ Diego Ibarguen

*Attorneys for Defendant Hearst Communications, Inc.*